GEORGE LAGEN *et al.*, Plaintiffs-Appellants, v. BALCOR COMPANY *et al.*, Defendants-Appellees.

Second District No. 2—94—1245

Opinion filed July 27, 1995.

Burton I. Weinstein and Seth R. Halpern, both of Baskin, Server, Berke, Weinstein & Spiro, of Chicago, for appellants.

Joseph L. McEntee, Lee Ann Russo, C. Edward Watson II, and Patrick T. Stanton, all of Jones, Day, Reavis & Pogue, of Chicago, for appellee the Balcor Company.

Linda K. Stevens and Richard J. Hoskins, both of Schiff, Hardin & Waite, of Chicago, for appellee Charles Walsh.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiffs, comprised of 76 investors, appeal the trial court's orders dismissing their complaint with prejudice pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). Defendants, the Balcor Company (Balcor) and Charles Walsh (Walsh), solicited more than $15,500,000 from plaintiffs to purchase

ownership shares in 13 real estate limited partnerships. Plaintiffs initiated this action after the limited partnerships failed to provide them either profits or tax benefits.

Plaintiffs' third amended complaint, comprised of the second amended complaint and the "Amendment on its Face, of the Second Amended Complaint" (complaint), sets forth three possible theories of liability. Plaintiffs contend defendants (1) fraudulently induced plaintiffs to invest in various limited partnerships; (2) breached their fiduciary duty by inducing plaintiffs to purchase shares in the limited partnerships; and (3) violated the Consumer Fraud and Deceptive Practices Act (Act) (see 815 ILCS 505/2 (West 1992)) in soliciting plaintiffs' investments.

The trial court dismissed the complaint for failure to state a cause of action. In its order of September 28, 1994, the trial court stated "the representations contained in the [Private Placement Memorandum (PPM)] *** disclosure information preclude plaintiffs from stating fraud and breach of fiduciary duty as a matter of law." Plaintiffs contend the trial court erred in dismissing the complaint. We affirm.

Defendants argue the trial court erred by not dismissing plaintiffs' statutory claim for being filed approximately six years after the statute of limitations had run. The record does not indicate defendants filed either a notice of cross-appeal or a separate appeal. Appellees may not argue alleged errors unless they timely file a notice of cross-appeal or a separate appeal. (*Harding v. City of Highland Park* (1992), 228 Ill. App. 3d 561, 572; see 134 Ill. 2d R. 303(a)(3).) We, therefore, will not address defendants' argument.

■ Before reaching the merits, we address defendants' use of footnotes. "Footnotes, if any, shall be used sparingly." (145 Ill. 2d R. 341(a).) Defendants' brief contains 35 footnotes. Many of these footnotes contain substantive argument which should be presented in the body of the brief. Several of the footnotes occupy more than one-half of a page. All of the footnotes are single spaced. This cannot be characterized as using footnotes "sparingly." We also note defendants' brief is 71 pages long. The page limitation of Rule 341(a) would likely have been violated had the footnotes been integrated into the body of the brief. (See 145 Ill. 2d R. 341(a) (page limitation for appellant's and appellee's briefs, if not printed, is 75 pages).) Using footnotes to circumvent the page limitation violates "the spirit, and probably *** the letter, of the law." *In re Estate of Marks* (1992), 231 Ill. App. 3d 313, 320.

We hold that defendants' use of footnotes violates Rule 341(a). Adherence to the page limitations and guidelines for footnote usage

is not an inconsequential matter. (See *Zadrozny v. City Colleges of Chicago* (1991), 220 Ill. App. 3d 290, 292.) Neither are these limitations and guidelines arbitrary exercises of the supreme court's supervisory powers. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 232.) On the contrary, Rule 341 represents the Illinois Supreme Court's considered opinion of the format that best facilitates the clear and orderly presentation of arguments. Parties ignore Rule 341 at their peril. On our own motion, therefore, defendants' footnotes are stricken.

Balcor is a national syndicator of real estate limited partnerships. Balcor along with Walsh were co-general partners of the limited partnerships in which plaintiffs invested.

Walsh is the sole shareholder and chief operating officer of Associated Professional Consultants, Inc. (APC). APC is a consulting firm providing physicians and dentists with both management and investment advice. Plaintiffs allege Walsh personally acted as their investment consultant.

Walsh solicited plaintiffs to invest in various real estate limited partnerships offered by Balcor. Walsh sent newsletters on APC letterhead to plaintiffs describing the limited partnerships. The limited partnerships were presented as "tax shelters." Each partnership had a finite number of partnership shares. Shares were available on a "first-come, first-served" basis. APC clients who expressed interest were forwarded additional materials.

Before investing in any of the limited partnerships, plaintiffs were sent a PPM. The PPMs varied in length. Some were over 100 pages long. Each PPM served as an offer to invest in a limited partnership. Although each PPM was tailored to a specific limited partnership, much of the language alerting prospective limited partners to the risks of such real estate ventures was common to all the PPMs. Each PPM contained detailed information concerning, *inter alia*, the partnership; the real estate held by the partnership; the compensation to be paid to the general partner and its affiliates; the risks attendant to the partnership; conflicts of interest between the partnership and the general partner and its affiliates; as well as the tax and legal aspects of the partnership. The type of font used did not vary within each PPM (except for the use of boldface and italics to delineate sections and subsections, respectively).

Only individuals fulfilling specific financial criteria were eligible to invest in the partnerships. While we have reviewed the financial criteria set forth in each PPM, we discuss only the requirements listed in the earliest and latest offering documents. These two documents illustrate the evolution of the financial criteria over the

pertinent time period. The PPM for Canton Associates, Ltd., dated August 17, 1979, stated that only persons with either (1) a net worth (excluding home, furnishings and automobiles) of $100,000 and an expectation of income over a three-year period taxable in the 50% Federal income tax bracket; or (2) a net worth (excluding home, furnishings and automobiles) of $300,000 were eligible to invest.

Approximately six years later, the Quail Run Associates PPM contained even more stringent criteria. To be an eligible investor a party would have to (1) have an annual income greater than $200,000 for the last two years, expect to have an annual income of $200,000 for the current year, and have a net worth (excluding home, furnishings and automobiles) of at least three times the proposed investment; or (2) have an expectation of income during the current year taxable in the 42% Federal income tax bracket and either (a) have a net worth (excluding home, furnishings and automobiles) of either four or five times (depending on the prospective investor's home State) the proposed investment, (b) be investing at least $150,000 and such figure does not exceed 20% of the investor's net worth, or (c) have a net worth in excess of $1 million (including home, furnishings and automobiles). By signing a signature page each plaintiff represented and warranted he or she met the financial criteria set forth in the PPM.

A complaint should be dismissed under section 2—615 for failure to state a cause of action only when it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61; *Capitol Indemnity Corp. v. S. Smith Intermediaries, Inc.* (1992), 229 Ill. App. 3d 119, 123; *Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299.) This broad statement, however, should not be interpreted as an adoption of notice pleading. (*Capitol*, 229 Ill. App. 3d at 123.) Illinois remains a fact-pleading jurisdiction. *Oravek v. Community School District 146* (1994), 264 Ill. App. 3d 895, 898.

A section 2—615 motion admits all well-pleaded facts as true, but not conclusions of law or factual conclusions which are unsupported by allegations of specific facts. (*Talbert v. Home Savings of America, F.A.* (1994), 265 Ill. App. 3d 376, 379.) If after disregarding any legal and factual conclusions the complaint does not allege sufficient facts to state a cause of action, the motion to dismiss should be granted. (*Groenings*, 215 Ill. App. 3d at 300.) In ruling on a motion to dismiss for failure to state a cause of action, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff, but factual deficiencies may not be cured by liberal construction. *Groenings*, 215 Ill. App. 3d at 300.

■ In making our decision, we consider the PPMs even though they were not appended as exhibits to the complaint. Both plaintiffs' claim and defendants' defense are largely founded upon the PPMs. Section 2—606 of the Civil Practice Law provides "[i]f a claim or defense is founded upon a written instrument, a copy thereof *** *must* be attached to the pleading as an exhibit ***. *** [T]he exhibit constitutes a part of the pleading for all purposes." (Emphasis added.) (735 ILCS 5/2—606 (West 1992).) The PPMs, therefore, should have been appended as exhibits to the complaint. Plaintiffs concede as much in their brief. In dismissing plaintiffs' complaint, the trial court relied heavily on the PPMs. In light of section 2—606's plain language, the trial court's use of the PPMs, and plaintiffs' concession, we also will consider the PPMs. With the above principles in mind, we first turn to plaintiffs' allegations of fraudulent inducement.

■ Plaintiffs allege defendants' failure to disclose material facts fraudulently induced plaintiffs to become limited partners in various real estate enterprises. Fraudulent inducement is a form of common-law fraud. (See *Mann v. Kemper Financial Cos.* (1992), 247 Ill. App. 3d 966, 979 (discussing fraudulent inducement in terms of common-law fraud).) To state a cause of action for common-law fraud, a plaintiff must plead (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance. (*People ex rel. Hartigan v. E&E Hauling, Inc.* (1992), 153 Ill. 2d 473, 490.) As indicated above, the basis of a negligent misrepresentation claim must be a statement of fact; expressions of opinion are not actionable. (See *Marino v. United Bank* (1985), 137 Ill. App. 3d 523, 527.) We have stated "[a] representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact." (*Marino*, 137 Ill. App. 3d at 527, citing Restatement (Second) of Torts § 538A (1977).) Generally, financial projections are considered to be statements of opinion, not fact. See *Murphy v. Walters* (1980), 87 Ill. App. 3d 415, 423.

■ Plaintiffs also allege defendants fraudulently concealed material facts. We have previously noted, "silence in a business transaction does not amount to fraud." (*Heider v. Leewards Creative Crafts, Inc.* (1993), 245 Ill. App. 3d 258, 269.) Only when a party's silence is "accompanied by deceptive conduct or suppression of material facts" resulting in an active deception does the party have a duty to speak. *Heider*, 245 Ill. App. 3d at 269.

Plaintiffs allege defendant made several false statements of ma-

terial fact. Among these were statements (1) concerning the success of prior unrelated limited partnership ventures, "implying directly and indirectly" that future limited partnerships would be as successful; (2) made by Walsh "heralding the *soundness of* real estate investment" (emphasis in original); (3) in the PPMs concerning "the detailed performance of past 'concluded properties' *** as an inducement to purchase new property interests"; (4) contained in correspondence from APC and Balcor "downplaying and ignoring" proposed reforms in the Federal income tax system; (5) by Walsh touting the growth potential of the areas in which partnership real estate was located "despite having access to information that those areas were fast becoming over saturated and that the local economy and job climate would not support rental properties"; and (6) by Walsh asserting that real estate is not adversely affected by economic fluctuations.

Additionally, plaintiffs allege defendants concealed several material facts. These concealed facts allegedly included (1) dramatic changes in the local and national real estate markets; (2) the prohibitive costs of operating and maintaining the properties; (3) the saturation of the various residential and commercial real estate markets in which the properties were located; (4) future reforms to the "Internal Revenue Code which were under legislative and private sector discussion"; (5) the highly leveraged nature of the partnership properties; (6) defendants' entitlement to "enormous fees" from the partnerships; and (7) a decline in various local economies.

The PPMs contain extensive cautionary language. We hold that this cautionary language demonstrates (1) defendants neither made false statements of material fact nor concealed material facts; and (2) any reliance on the alleged misrepresentations by plaintiffs was unreasonable.

It is well established that meaningful cautionary language in an offering document can negate the materiality of any alleged misrepresentation or omission and may thus form the basis for granting a motion to dismiss for failure to state a cause of action. (See *In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation* (3d Cir. 1994), 7 F.3d 357, 371-72.) This principle is known as the "bespeaks caution" doctrine. (*Trump*, 7 F.3d at 371.) Although the bespeaks caution doctrine is generally invoked in the context of Federal securities-fraud claims, one Federal court has noted that the doctrine, when properly construed, merely represents the pragmatic application of two fundamental concepts: materiality and reliance. (*In re Worlds of Wonder Securities Litigation* (9th Cir. 1994), 35 F.3d 1407, 1414.) Put another way, " 'the "bespeaks caution" doctrine

reflects the unremarkable proposition that statements must be analyzed in context.' " (*Worlds of Wonder*, 35 F.3d at 1414, quoting *Rubinstein v. Collins* (5th Cir. 1994), 20 F.3d 160, 167.) Thus, cautionary language, if sufficiently substantive and tailored to the projections, estimates, and opinions contained in an offering document, can render alleged misrepresentations and omissions immaterial as a matter of law. (See *Trump*, 7 F.3d at 371-72; see also *In re Integrated Resources Real Estate Ltd. Partnerships Securities Regulation* (S.D.N.Y. 1993), 850 F. Supp. 1105, 1141 ("[w]hile caveats about projections do not insulate a Defendant from fraud, the warnings in a PPM can show that future presentations are merely projections, not statements of fact upon which the [p]laintiffs can rely").) Although the present case does not involve a Federal securities-fraud claim, the complaint does rely on statements contained in the PPMs. The present case, therefore, bears a close resemblance to such Federal securities-fraud claims. Accordingly, because the bespeaks caution doctrine mirrors the requirements of materiality and reliance in a common-law fraud claim, it may be invoked in this case.

█ All of the PPMs are replete with cautionary language warning potential investors of the risks attendant to limited partnerships, conflicts of interests, compensation and fees owed defendants and the tax aspects and uncertainties of the proposed investments. Although we will not discuss the cautionary language included in each PPM, in reaching our decision we have reviewed each of the offering documents. What follows is a representative sampling of the warning language triggering the bespeaks caution doctrine.

Defendants provided ample warning that real estate investments were not immune to economic forces such as interest rates, employment, building occupancy, competition and operating expenses. For example, each PPM contains a section entitled "RISK AND OTHER IMPORTANT FACTORS." The first paragraph under this section in the Canton PPM states:

> "The [p]artnership's investment in the [p]roperty will be subject to the risks generally incident to the ownership of real property, including changes in general or local governmental rules and fiscal policies (including rent control legislation), economic conditions, neighborhood values, tenant turnover, competition, shortages and increased costs resulting from the present energy situation, and other factors which are beyond the control of the [g]eneral [p]artner."

The PPMs also warned plaintiffs that the Federal income tax consequences of limited partnerships might be changed by either administrative or legislative action. For example, the August 14,

1985, Sedgefield PPM states "no assurance can be given that tax legislation may not be enacted at some future date with provisions which might adversely affect the [p]artnership or [l]imited [p]artners." Our review of the PPMs reveals defendants did not "downplay or ignore" possible income tax reforms. On the contrary, throughout the 1980s, defendants updated and expanded their discussion of the possible importance of income tax reform to the limited partnerships.

As a matter of law, plaintiffs may not assert defendants used the performance of other partnerships as an inducement. The August 15, 1984, Summit Ridge PPM prefaced its presentation of defendants' "track record" with the following:

> "The inclusion of the following tables *** does not imply that the [p]artnership will make investments comparable to those reflected in the tables with respect to cash flow, income tax deductions available to investors, or other factors, nor does it imply that they will experience returns, if any, comparable to those experienced by investors in the partnerships referred to below."

Each PPM contained similar or identical language. Moreover, as time passed, defendants revealed in the PPMs various specific "adverse business developments and conditions" suffered by prior limited partnerships.

Each PPM clearly set forth the compensation and fees that would be paid to defendants. The PPMs also revealed the partnerships were highly leveraged and that there were risks attached to such financing schemes. Finally, each PPM contained a section entitled "CONFLICTS OF INTERESTS." In this section defendants revealed, *inter alia*, that Walsh was a co-general partner in each limited partnership and would benefit from plaintiffs' investment.

In view of the above, we find that the allegedly false statements of fact were "accompanied by meaningful cautionary statements" which render reliance on those facts immaterial as a matter of law. (See *Trump*, 7 F.3d at 371; *Integrated Resources*, 850 F. Supp. at 1141.) Because the cautionary language in the PPMs negates, as a matter of law, the elements of reasonable reliance and materiality, plaintiffs' complaint fails to allege adequately the elements of a claim for common-law fraud. See *Worlds of Wonder*, 35 F.3d at 1413 (holding that bespeaks caution doctrine is properly raised in a motion to dismiss for failure to state a cause of action); *Elipas Enterprises, Inc. v. Silverstein* (1993), 243 Ill. App. 3d 230, 235 (holding that question of reasonable reliance may be decided on pleadings alone).

Neither did defendants fraudulently conceal material facts from plaintiffs. The extensive cautionary language, as a matter of law, strips defendants' silence (assuming defendants remained silent on

any of the matters alleged by plaintiffs) of the "deceptive conduct or suppression of material facts" required to state a cause of action for fraudulent concealment. See *Heider*, 245 Ill. App. 3d at 269.

Plaintiffs' second theory of liability is that defendants breached the fiduciary duty they owed plaintiffs. A necessary precursor to fiduciary liability is the existence of a fiduciary relationship. We note the conduct objected to by plaintiffs pre-dates plaintiffs' status as limited partners. Plaintiffs, therefore, cannot rely on their subsequent partnership status to give rise to a fiduciary relationship. See *Martin v. Heinold Commodities, Inc.* (1994), 163 Ill. 2d 33, 44-45 (agents are not generally under a fiduciary duty when making the agreement by which they become agents).

The party seeking relief has the burden of proving the existence of a fiduciary relationship. (*Santa Claus Industries, Inc. v. First National Bank* (1991), 216 Ill. App. 3d 231, 238.) "A fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith—in fact to treat the principal as well as the agent would treat himself." (*Burdett v. Miller* (7th Cir. 1992), 957 F.2d 1375, 1381 (applying Illinois law).) If a person solicits another to trust him in matters in which he represents himself to be an expert and the offer is accepted, a fiduciary relationship may be found. (*Continental Leavitt Communications, Ltd. v. PaineWebber, Inc.* (N.D. Ill. 1994), 857 F. Supp. 1266, 1275 (Illinois law).) However, "[t]he fact that one party trusts the other is insufficient [to create a fiduciary relationship]. We trust most people with whom we choose to do business." *Pommier v. Peoples Bank Marycrest* (7th Cir. 1992), 967 F.2d 1115, 1119 (Illinois law); see also *De Witt County Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 27.

The essence of a fiduciary relationship is that one party is dominated by the other. (*Pommier*, 967 F.2d at 1119; see also *Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 31.) Indeed, in the absence of dominance and influence there is no fiduciary relationship regardless of the level of trust between the parties. (*Continental*, 857 F. Supp. at 1275; see also *In re VMS Ltd. Partnership Securities Litigation* (N.D. Ill. 1992), 803 F. Supp. 179, 195-96 (Illinois law).) As numerous courts have pointed out, a " 'slightly dominant business position *** [does] not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship.' " (*Mid-America National Bank v. First Savings & Loan Association* (1987), 161 Ill. App. 3d 531, 538, quoting *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 774.) Thus, the touchstone of a fiduciary relationship is the presence of a significant degree of dominance and superiority of one party over another. See *Pommier*,

967 F.2d at 1119; *Burdett*, 957 F.2d at 1381; *Continental*, 857 F. Supp. at 1275.

Viewed in light of the above standards, plaintiffs' complaint is, as a matter of law, insufficient to allege a prepartnership fiduciary relationship between defendants and plaintiffs. Plaintiffs' complaint contains conclusory allegations concerning defendants' alleged fiduciary duty. Plaintiffs assert Walsh "established a position of trust and confidence" by acting as their investment consultant. Plaintiffs also allege that defendants each "boasted of the claimed superior knowledge of the other." By virtue of this claimed superior knowledge, plaintiffs assert defendants "possessed a position of dominance and influence" over plaintiffs. Plaintiffs' complaint alleges no specific facts supporting their assertions of trust, confidence, superior knowledge, influence, or dominance. Put simply, plaintiffs' conclusory allegations, even when viewed in the light most favorable to plaintiffs, do not give rise to an inference of the significant dominance and superiority which is the prerequisite of a fiduciary relationship.

The cases cited by plaintiffs for the proposition that defendants owed plaintiffs a fiduciary duty are distinguishable. *Burdett* involved specific factual allegations supporting the inferences that (1) there was a gross disparity in experience and expertise between the alleged fiduciary and the client; (2) the alleged fiduciary cultivated a close personal relationship with the client; and (3) the client accepted the alleged fiduciary's advice uncritically and unquestioningly. (See *Burdett*, 957 F.2d at 1381.) Plaintiffs' allegations, in contrast, do not support comparable inferences. On the contrary, plaintiffs in the present case are themselves businesspersons. Furthermore, unlike the present case, *Burdett* did not involve a detailed written prospectus describing the investments at issue. Rather, in *Burdett*, the investor relied on the oral representations of the investment advisor. See *Burdett*, 957 F.2d at 1379 (no written description of investments provided).

Plaintiffs also claim *Martin* supports the imposition of a prepartnership fiduciary duty. We disagree. *Martin* involved extremely complex investment products known as London Commodity Options (LCOs). These LCOs were obtainable only in London, England. To trade in LCOs, plaintiff had to use a broker. The trial court expressly found that LCOs were so complicated and byzantine an investment that "no investor in America, regardless of how sophisticated, could truly understand [LCO] trading without the help of a broker." (*Martin*, 163 Ill. 2d at 40.) Unlike the present case, in *Martin* the plaintiff was completely at the mercy of and dependent upon the broker. Based on the trial court's explicit factual finding that the

plaintiff placed special trust and confidence in the broker, the supreme court affirmed the appellate court's determination that under the unique circumstances presented in *Martin* the broker owed plaintiff a fiduciary duty. (See *Martin*, 163 Ill. 2d at 48-49.) By contrast, we have already held that the PPMs in the present case clearly revealed the risks, conflicts, and uncertainties of the limited partnerships. In *Martin*, the trial court expressly found the plaintiff incapable of understanding the LCOs; there has been no comparable finding concerning the PPMs in the present case. This is the crucial distinction between *Martin* and the present case. In view of the above authorities, we hold that plaintiffs' complaint demonstrates nothing more than an arm's length business relationship and is insufficient as a matter of law to charge the existence or breach of a prepartnership fiduciary duty.

Finally, plaintiffs contend defendants' solicitation violated the Act. To establish a violation of the Act a plaintiff must prove (1) a deceptive act or practice; (2) defendant intended plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce. (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542.) Although the Act provides broader protection than does common-law fraud (*Siegel*, 153 Ill. 2d at 541-43), thus rendering complaints alleging a violation of the Act more resistant to section 2—615 motions, plaintiffs must still allege some sort of deception by the defendant to avoid dismissal. As we have already stated, the PPMs set forth in great detail the nature and risks of investing in real estate limited partnerships. We hold that the complaint, as a matter of law, fails to allege any deceptive practice. The trial court, therefore, correctly dismissed plaintiffs' cause of action premised on the Act.

For the reasons stated above, we affirm the judgment of the circuit court of Lake County.

Affirmed.

INGLIS and DOYLE, JJ., concur.