# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750

---

| | |
|---|---|
| Appellate Court Caption | AVON HARDWARE COMPANY, d/b/a Avon Ace Hardware, MICHAEL A. CLARK, BEVERLY A. CLARK, YIDO, INC., d/b/a Mr. Mike's Ace Hardware, DEBBIE PASCIAK, and MICHAEL PASCIAK, Plaintiffs-Appellants, v. ACE HARDWARE CORPORATION, Defendant-Appellee. |
| District & No. | First District, First Division <br> Docket No. 1-13-0750 |
| Filed | October 28, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' complaint alleging common-law and statutory fraud arising from the statements defendant made relating to the franchise agreement the parties entered into under which plaintiffs opened a hardware store was properly dismissed, since the agreements contained antireliance statements in which plaintiffs agreed that they had not received or relied on any guarantee of sales, revenues or profits of the stores defendant franchised and plaintiff's fraud claims did not allege the elements of materiality and reasonable reliance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-362; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Kenneth A. Wexler, Kara A. Elgersma, and Amy E. Keller, all of Wexler Wallace LLP, of Chicago, and Patrick R. Burns, of Lindquist & Vennum PLLP, and Gordon Rudd and David M. Cialkowski, both of Zimmerman Reed PLLP, both of Minneapolis, Minnesota, for appellants.

Norman M. Leon and John A. Hughes, both of DLA Piper LLP, of Chicago, for appellee.

Gary W. Leydig, of Riordan, Fulkerson, Hupert & Coleman, of Chicago, and Dady & Gardner PA (Ronald K. Gardner, John D. Holland, and Kristy L. Zastro, of counsel), of Minneapolis, Minnesota, for *amicus curiae* Coalition of Franchisee Associations, Inc.

Marc N. Blumenthal, of Law Offices of Marc N. Blumenthal, of Chicago, for *amicus curiae* American Franchise Association.

Panel

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Cunningham concurred in the judgment and opinion.


**OPINION**

¶ 1     The plaintiffs, Avon Hardware Company, doing business as Avon Ace Hardware, Michael A. Clark, Beverly A. Clark, Yido, Inc. (Yido), doing business as Mr. Mike's Ace Hardware, Debbie Pasciak, and Michael Pasciak, appeal from the circuit court order which dismissed their complaint alleging various claims of common-law and statutory fraud based on statements made by the defendant, Ace Hardware Corporation (Ace), in connection with the parties' franchise agreement.[1] We affirm.

¶ 2     On September 28, 2012, the plaintiffs filed an amended complaint, alleging the following facts and claims. In 2000, Ace created a concept store plan, known as "Vision 21," which consisted of large Ace stores aimed at competing with "big box" retailers, such as Home Depot and Lowe's. In 2006, the Pasciaks, through their corporation, Yido, entered into a franchise agreement with Ace to operate a Vision 21 store in Indianapolis. On September 15, 2006, Ace provided the Pasciaks a "*pro forma*" document, dated June 1, 2006, containing sales and cash flow forecasts. The Pasciaks allege that the *pro forma* document led them to

---

[1]The Coalition of Franchisee Associations, Inc., and the American Franchise Association filed *amici curiae* briefs in support of the plaintiffs.

believe their store would be successful. Ace also provided them, as regulated but not required by federal law, a "Uniform Franchise Offering Circular" (UFOC).[2] See 16 C.F.R. § 436.1 *et seq.* (2006). According to the complaint, this document contained misleading historical financial data regarding the performance of existing Ace hardware stores. The complaint alleges that Ace sent the *pro forma* document to Wells Fargo in order to assist the Pasciaks in obtaining a loan to close the deal with Ace. After the *pro forma* document was submitted, Wells Fargo did not approve the loan. The complaint alleges that, following the initial loan denial and without input from the Pasciaks, Ace manipulated the numbers in the *pro forma* document in order to satisfy Wells Fargo's financing requirements.

¶ 3    The Pasciaks' store, Mr. Mike's Ace Hardware, opened in February 2007 and never approached the forecasted sales and revenue provided in the *pro forma* document. The complaint alleges that Ace stated that Mr. Mike's would make $1,875,000 in sales in its first year and increasingly more in the following years; in fact, the store made $1,421,998 in its first year and eventually failed. The complaint also alleges that Ace knew the store would never make the $1,875,000 and used fraudulent and misleading historical sales and projected figures to entice the Pasciaks to open the store. Following the store's failure, the Pasciaks learned that Ace had manipulated the numbers contained in the *pro forma* and UFOC documents, and they filed suit.

¶ 4    In 2007, the Clarks, through their corporation, Avon Hardware Company, similarly entered into a franchise agreement with Act to operate a Vision 21 store in Avon, Indiana. Like the Pasciaks, the Clarks allege that Ace provided *pro forma* and UFOC documents which contained false and misleading financial information. They also allege that Ace manipulated its *pro forma* numbers to satisfy Wells Fargo's financing requirements, allowing the Clarks to obtain the necessary loan to open their store in September 2008. Ace had projected that the Avon Ace store would make $1,445,000 in sales in its first year; the store, however, made only $731,994 and eventually failed in November 2009. According to the complaint, Ace used its fraudulent and misleading projected and historical sales figures to entice the Clarks into opening their store. After the store's failure, the Clarks became aware that Ace manipulated the *pro forma* and UFOC figures and filed suit.

¶ 5    The *pro forma* documents provided to the Pasciaks and the Clarks were attached to the plaintiffs' amended complaint and contain largely similar language. The *pro forma* documents state, in relevant part, that the projections contained therein "including, sales, profits or earnings," are "merely estimates and should not be considered as the actual or potential sales, profits or earnings that will be realized by any specific store operator." Each document contains numerous estimates specific to each store, including estimated costs to

---

[2]This document has been renamed by the Federal Trade Commission and is now known as the "Franchise Disclosure Document." See 16 C.F.R. § 436.1 *et seq.* (2012). The *amicus curiae* briefs predominantly focus on Ace's violation of the federal regulations governing this document; however, there is no private right of action under the federal statutory scheme (*Freedman v. Meldy's, Inc.*, 587 F. Supp. 658, 659 (E.D. Pa. 1984)), and the plaintiffs' claims are not based on any violation of a federal regulation. Accordingly, we do not address the *amici curiae* argument that Ace violated the federal rules governing its UFOC.

open the stores, projected annual sales, estimated annual sales for the first year of business and several years thereafter, and an estimate as to the year the parties could expect to earn a profit.

¶ 6     The UFOC documents provided to the plaintiffs were also attached to the complaint and contain similar language. The Pasciaks' UFOC states, in relevant part, that as of December 31, 2005, there were 4,585 franchised Ace stores and 17 corporately owned Ace stores. Item 19 states that the average store performance numbers contained therein for fiscal years 2004 and 2003 were "based on information submitted to [Ace] by reporting member stores." The document discloses that the financial information from its stores "has not been independently verified by [Ace]." The average store performance numbers for 2004 were computed based on 1,477 stores which reported their financial data to Ace; the averages for 2003 were based on financial data from 1,504 stores. The footnotes to item 19 warn that the 2003 and 2004 performance data represent only about 37% of "all member Ace stores," and that "[b]ecause we do not receive detailed financial data in a consistent format from all Members, the Statements reflect average store performance only for reporting stores." The footnotes further warn that, out of the 1,477 reporting stores, 76 stores had annual sales below $500,000, 245 stores had sales between $500,000 and $1 million, and one store had sales of only about $42,000. Additionally, the UFOC contained a list of all franchised outlets that had closed in the three years preceding the plaintiffs' acquisitions of their Ace stores. The document, in item 20, noted that 355 Ace stores closed in 2005; over 800 stores closed between 2003 and 2005.

¶ 7     The UFOC further states that the data presented or the data contained in any *pro forma* document "should not be relied upon solely or considered as the probable results that will be realized by any Member." The final paragraph of the average performance section states:

"THE DATA PRESENTED IN THIS ITEM 19 SHOULD NOT BE CONSIDERED AS THE ACTUAL, POTENTIAL OR PROBABLE RESULTS THAT WILL BE REALIZED BY YOU. WE DO NOT REPRESENT THAT YOU CAN EXPECT TO ATTAIN THESE RESULTS. A NEW MEMBER'S FINANCIAL RESULTS ARE LIKELY TO DIFFER FROM THOSE DESCRIBED IN THIS ITEM 19. SOME STORES HAVE ACHIEVED THESE RESULTS, BUT THERE IS NO ASSURANCE THAT YOU WILL DO AS WELL."

¶ 8     The Clarks received similarly worded UFOC documents with 2004 and 2005 financial data. The data from those years represented 37% of all stores for 2004 and 41% for 2005; the language contained therein was otherwise unchanged from the documents provided to the Pasciaks.

¶ 9     The plaintiffs also signed the "Ace Hardware Membership Agreement," after having received the *pro forma* and UFOC documents. Article V, section 11, of the "Ace Hardware Membership Agreement" provides that the "Member further represents and warrants" that "the Member has not received or relied upon any guarantee, whether express or implied, of the sales, revenues, profits or success of the business venture contemplated by this Agreement."

¶ 10    Counts I and II of the amended complaint allege that Ace violated the Indiana Franchise

Disclosure Act (Ind. Code Ann. § 23-2-2.5-1 *et seq.* (West 2006)) by providing *pro forma* and UFOC documents which did not comply with the guidelines for such documents. The complaint alleges that Ace purposely reported inflated historical store performance data by "fail[ing] to account for failed or failing stores" and misrepresented store averages to entice the plaintiffs into investing. It alleges that the plaintiffs reasonably relied upon the false and misleading information contained in the documents when they decided to invest with Ace. Counts III and IV are based on violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)), and counts V through X allege fraudulent inducement, fraud, and negligent misrepresentation; these claims are based on the same conduct as alleged against Ace in counts I and II.

¶ 11      Ace moved to dismiss the plaintiffs' amended complaint under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2012)). Ace argued that the franchise agreements contained antireliance statements in which the plaintiffs affirmatively represented that they had not received or relied upon any guarantee, express or implied, of sales, revenues, profits or success of Ace stores. According to Ace, the antireliance provision of its franchise agreement barred the plaintiffs' claims. Additionally, Ace argued that the financial statements in the documents are financial projections, which are considered statements of opinion and not actionable. Further, Ace argued that, contrary to the plaintiffs' allegations, the documents did not contain false statements because they contained information regarding the closures of Ace stores and warned that the financial data was based only upon a small percentage of Ace stores. According to Ace, as a matter of law, the plaintiffs' fraud claims fail to state the necessary elements; namely, that Ace made false statements of material fact and that the plaintiffs reasonably relied on the information provided to them.

¶ 12      On February 4, 2013, the circuit court entered an order dismissing the plaintiffs' complaint. The court stated that, under the "bespeaks caution" doctrine, cautionary language, if sufficiently substantive and specifically tailored to the projections, estimates of future performance, and opinions contained in an offering document, may render the alleged misrepresentation and omissions immaterial as a matter of law. The court determined that this doctrine applied in this case and that the cautionary language in the *pro forma* and UFOC documents rendered reliance on the statements contained therein immaterial as a matter of law. Thus, the court dismissed, with prejudice, counts V through X of the plaintiffs' amended complaint pursuant to section 2-619(a)(9) of the Code. Because the court determined that the plaintiffs could not plead reliance, it also dismissed, with prejudice, counts I through IV pursuant to section 2-615 of the Code. Thereafter, the plaintiffs timely appealed.

¶ 13      A dismissal under section 2-619 of the Code is proper where the plaintiff's claim against the defendant is barred by an affirmative matter which avoids the legal effect of or defeats the claim. *Schrager v. Bailey*, 2012 IL App (1st) 111943, ¶ 18 (stating an affirmative matter is akin to a defense, negating the cause of action). "[I]t is recognized that a section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action ***." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). We review a dismissal under section 2-619 *de novo*. *Schrager*, 2012 IL App (1st) 111943, ¶ 16.

¶ 14      A section 2-615 motion admits all well-pleaded facts as true, and dismissal is proper

when it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. *Lagen v. Balchor Co.*, 274 Ill. App. 3d 11, 16 (1995). In ruling on a section 2-615 motion, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff. *Id.* We review a dismissal under section 2-615 *de novo*. *Performance Electric, Inc. v. CIB Bank*, 371 Ill. App. 3d 1037, 1039 (2007).

¶ 15    We first consider the court's dismissal of counts V through X, which allege fraudulent inducement, fraud, and negligent misrepresentation. "Fraudulent inducement is a form of common-law fraud." *Lagen*, 274 Ill. App. 3d at 17. To state a cause of action for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance. *Id.* Fraud claims must be pleaded with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer. *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 722 (2008). Therefore, a plaintiff must at least plead with sufficient particularity facts which establish the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. *Id.* Negligent misrepresentation has essentially the same elements, except that the defendant need not know that the statement is false; rather his own carelessness or negligence in ascertaining the truth of the statement will suffice. *Board of Education of the City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989). Further, to plead a negligent misrepresentation claim, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information. *Id.*

¶ 16    The parties dispute whether the plaintiffs' allegations relating to Ace's manipulation of the financial data contained in the *pro forma* and UFOC documents constitute false statements of fact. Ace contends the plaintiffs' allegations relate to future projections, which do not constitute facts; the plaintiffs contend that their allegations relate to historical financial facts, which are actionable. In part, both parties are correct.

¶ 17    The basis of a fraud or negligent misrepresentation claim must be a statement of fact, not an expression of opinion. *Lagen*, 274 Ill. App. 3d at 17. "Generally, financial projections are considered to be statements of opinion, not fact." *Id.*; see also *Illinois Non-Profit Risk Management Ass'n*, 378 Ill. App. 3d at 723. However, "although representations of future income are not actionable, representations as to past income of a business constitute statements of fact." *Mother Earth, Ltd. v. Strawberry Camel, Ltd.*, 72 Ill. App. 3d 37, 48 (1979). "Even a statement that a business is profitable may be actionable" as a statement of past income is factual in nature. *Id.* at 48-49. We agree with Ace that the plaintiffs' allegations related to projected sales figures or other projected financial data, such as those contained in the *pro forma* document, are not actionable. Thus, the circuit court properly dismissed the plaintiffs' complaint as to the claims involving statements of future performance. However, some of the plaintiffs' allegations were based on false representations of historical financial data of Ace stores. Historical financial data, such as the past store performance averages included in the UFOC, is factual in nature and actionable, and we continue our analysis of those claims.

¶ 18    The plaintiffs argue that the circuit court improperly applied the "bespeaks caution" doctrine to bar them from establishing reasonable reliance as a matter of law. The "bespeaks caution" doctrine provides that cautionary language in a securities offering document can negate the materiality of any alleged misrepresentation or omission. *Lagen*, 274 Ill. App. 3d at 18. While commonly invoked in federal securities fraud claims, the "bespeaks caution" doctrine has been applied to common-law fraud claims as the doctrine "merely represents the pragmatic application of two fundamental concepts [of fraud claim]: materiality and reliance." *Id.* Under the doctrine, statements must be analyzed in context, and "cautionary language, if sufficiently substantive and tailored to the projections, estimates, and opinions contained in an offering document, can render alleged misrepresentations and omissions immaterial as a matter of law." *Id.* at 18-19.

¶ 19    The plaintiffs argue that Ace cannot shield its statements from liability under the bespeaks caution doctrine where it knew it had misrepresented material facts regarding its stores' past performance in order to entice new investors, relying on *Olczyk v. Cerion Technologies, Inc.*, 308 Ill. App. 3d 905 (1999).[3] We agree with the plaintiffs that the bespeaks caution doctrine applies to cautionary statements in financial offering documents relating to future projections, not present facts or current conditions. See *id.* at 913. However, we still analyze statements in context and consider whether all elements of the plaintiffs' claims have been properly pleaded. See *Lagen*, 274 Ill. App. 3d at 18 (stating that the bespeaks caution doctrine merely represents the pragmatic approach to analyzing the elements of materiality and reliance of a fraud claim). In doing so, we agree with Ace that its documents did not contain the alleged false statements of material fact and any reliance upon the historical data as evidence of the performance of all Ace stores or future Ace stores was unreasonable. Therefore, we find that dismissal of the plaintiffs' fraud claims based on false historical data was proper under section 2-615 for failing to allege the elements of materiality and reasonable reliance.

¶ 20    In this case, the language in the UFOC sufficiently demonstrates that Ace neither made false statements of material fact nor concealed material facts regarding the historical financial data of its stores. The plaintiffs allege that Ace "cherry-picked" the financial data to report in order to inflate its numbers and failed to include data regarding failed stores. However, the UFOC clearly states that its financial data was based only on a small fraction of all Ace stores–37% of all member Ace stores for 2004 and 41% for 2005. The form states that the data came only from stores that reported their numbers to Ace and warned that Ace did not independently verify any of the financial information submitted to it by its stores. Additionally, the UFOC contained information regarding the number of Ace stores which closed in the preceding three years, listing the numbers by state. Thus, contrary to the plaintiffs' allegations, the documents provided to them did not conceal the fact that the historical financial data was not representative of the performance of all Ace stores and did not fail to account for failed Ace stores.

[3]Ace argues that the plaintiffs forfeited its argument pertaining to the bespeaks caution doctrine by failing to raise the issue in the circuit court. Our review of the record discloses that the doctrine was raised in the court below by the parties albeit not by its technical name.

¶ 21    Moreover, to the extent that the plaintiffs allege they relied upon the historical data as a representation of the performance of all Ace stores, the cautionary language contained in the documents renders any reliance on the alleged misrepresentations by plaintiffs unreasonable. As stated earlier, the UFOC sufficiently apprised the plaintiffs that the data did not represent the past performance of all Ace stores, but only a small fraction thereof. The UFOC, along with the other documents provided to the plaintiffs, was replete with warnings to not rely upon any of the projections or past performance data to predict future performance by any store. Therefore, because the plaintiffs, as a matter of law, failed to state the necessary elements of reasonable reliance and materiality of their common-law fraud claims, the circuit court properly dismissed counts V through X. However, we find that the dismissal was proper under section 2-615 of the Code, rather than section 2-619(a)(9) as the circuit court ordered.

¶ 22    For similar reasons, the circuit court properly dismissed the plaintiffs' statutory fraud claims. The Indiana Franchise Disclosure Act creates a private right of action only for acts which constitute fraud, deceit or misrepresentation (*Continental Basketball Ass'n v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 137 (Ind. 1996)) and such claims require reasonable reliance and materiality (*Hardee's of Maumelle, Arkansas, Inc. v. Hardee's Food Systems, Inc.*, 31 F.3d 573, 578 (7th Cir. 1994)). As we concluded in our common-law fraud analysis, the plaintiffs failed to state these elements as a matter of law. Therefore, the circuit court properly dismissed counts I and II of the amended complaint under section 2-615 of the Code.

¶ 23    Although the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) does not require reliance, it does require materiality. See *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (2006) ("plaintiff's reliance is not an element of statutory consumer fraud"). To state a claim under the Act, a plaintiff must show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Id.* As we concluded in our analysis of the plaintiffs' common-law fraud claims, the documents provided to them did not make any false statements of material fact or conceal any material facts.[4] Thus, on this basis, the circuit court properly dismissed counts III and IV under section 2-615 of the Code.

¶ 24    Based on the foregoing reasons, the circuit court properly dismissed the plaintiffs' amended complaint for failing to state claims upon which relief might be granted.

¶ 25    Affirmed.

[4]Ace contends that the plaintiffs lack standing to raise a claim under the Act because they are nonresidents and the franchise sale took place in Indiana. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 187 (2005) (finding that a nonresident may have standing under the Act "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois"). Because we resolve the claim on other grounds, we need not address the standing issue.