PHILIPPE OLCZYK *et al.*, on Their Behalf and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. CERION TECHNOLOGIES, INC., *et al.*, Defendants-Appellees.

First District (5th Division)  No. 1—98—2019

Opinion filed November 19, 1999.

Miller, Faucher, Cafferty & Wexler, L.L.P., of Chicago (Marvin A. Miller, Dom J. Rizzi, and Jennifer Winter Sprengel, of counsel), for appellants.

Sidley & Austin (Walter C. Carlson, Linton J. Childs, and Hille R. Sheppard, of counsel), and Jenner & Block, both of Chicago (Jerold S. Solovy, Ronald L. Marmer, C. John Koch, and Michael T. Brody, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Philippe Olczyk, Robert K. Pickup and Joshua Teitelbaum, individually and on behalf of all others similarly situated (collectively plaintiffs), appeal from the circuit court's dismissal of their second amended consolidated class action complaint (subject complaint) with prejudice. Plaintiffs, stockholders of defendant Cerion Technologies, Inc. (Cerion), a "high-tech" manufacturer of components for computer disk drives, had filed suit against Cerion and defendants Nashua Corporation (Nashua), William Blair & Co. (Blair), David A. Peterson, Paul A. Harter, Richard A. Clark, Gerald G. Garbacz and

Daniel M. Junius (collectively defendants), alleging that Cerion's representation of its business prospects in its prospectus was misleading because it failed to disclose the fact at the time of its offering that Cerion already "was being eliminated as a supplier by its two major customers." In dismissing the subject complaint with prejudice, the court held that defendants' prospectus "bespoke caution" and that plaintiffs had failed to plead facts sufficient to overcome the warnings and risk disclosures set forth in the prospectus. The sufficiency of the subject complaint under state and federal law is the crux of this appeal.

Plaintiffs raise as issues whether: (1) the circuit court erred in dismissing the subject complaint with prejudice for failing to satisfy Illinois' fact-pleading rules; (2) the court misconstrued the "bespeaks caution" doctrine as applied to Cerion's prospectus; (3) alternatively, they lacked standing to bring their claims for relief under the state and federal securities laws; and (4) the court abused its discretion when it dismissed plaintiffs' subject complaint with prejudice, denying them leave to amend. The facts recited below are derived from the pleadings and attached exhibits.

Cerion, a manufacturer of aluminum disk substrates, set forth its business condition in a prospectus it prepared for the initial public offering of its common stock. Following the dissemination of that prospectus, on May 24, 1996, Cerion issued and sold 3,840,000 shares of common stock at $13 per share, yielding aggregate proceeds of more than $45 million. The stock was issued pursuant to a registration statement filed with the Securities and Exchange Commission (SEC) on the same date.

Plaintiff Pickup purchased 1,000 shares of Cerion common stock at $19.50 per share on May 24, 1996, the date of its issuance, on the open market and 1,000 shares at $9.875 on June 12, 1996. Plaintiff Teitelbaum purchased 100 shares of Cerion common stock at $10.50 per share on June 21, 1996. Plaintiff Olczyk purchased 10,000 shares of Cerion common stock at $11.625 on June 14, 1996, 10,000 shares at $9.4875 per share on June 21, 1996; and 500 shares at $10.875 per share on July 3, 1996. Teitelbaum was the first to file suit, challenging Cerion's disclosures in its initial public offering, followed by Olczyk, who made similar allegations. The two cases were consolidated. On March 21, 1997, Teitelbaum and Olczyk, joined by Pickup, filed a consolidated amended class action complaint (amended complaint) against Cerion, Nashua, the parent corporation of Cerion at the time of the offering and principal financial beneficiary of the offering, Blair, the lead underwriter of the offering, and five officers and directors of Cerion. The amended complaint alleged that Cerion's registration

statement and prospectus and the statements contained in these documents were materially false and misleading to investors in violation of the Securities Act of 1933 (Securities Act) (15 U.S.C. § 77a *et seq.* (1994)) and other laws, because they failed to disclose that "StorMedia [, Cerion's largest customer,] was experiencing trends and changes in its own business which placed its relationship with Cerion in jeopardy and *** result[ed] in a complete termination of their supply and contractual arrangements[,] *** jeopardizing Cerion's future financial results."

Defendants' motions to dismiss the amended complaint were granted on October 9, 1997, for want of specificity, particularly the factual basis supporting the allegation that Cerion knew it was losing the business of its largest customer when its registration statement and prospectus were issued. Plaintiffs were granted leave to amend.

On December 5, 1997, plaintiffs filed the subject five-count second amended complaint, now alleging that certain statements and nondisclosures in the prospectus, attached as an exhibit, constituted material misrepresentations and omissions and stated claims under sections 11, 12 and 15 of the Securities Act of 1933 (counts 1, 2 and 3, respectively) and under the Illinois Securities Law of 1953 (815 ILCS 5/1 *et seq.* (West 1998)) (count 4) and consumer fraud law (count 5). Plaintiffs alleged that, at the time of the offering, Cerion was a manufacturer of aluminum disk substrates, the metallic platforms for thin film disks used in computer hard disk drives; in 1995, substrate sales comprised about 95% of Cerion's total sales; prior to the offering, Cerion was informed it was being eliminated as a supplier by its two major customers, StorMedia and HMT; and defendants completed the offering without disclosing these material facts in the registration statement and prospectus. Plaintiffs asserted that such omissions were material to Cerion's business and to its prospective investors because StorMedia and HMT accounted for 86% of Cerion's sales in 1995 and 84% of sales in the first three months of 1996, yet the prospectus represented that Cerion's business was rapidly expanding, so fast that Cerion "might not be able to expand fast enough to accommodate the demand for Cerion's products."

The subject complaint further asserted that, at the time of the offering, StorMedia was largely dependent upon purchases by another business entity, Maxtor Corporation (Maxtor) which, in 1995, comprised 45% of StorMedia's net sales. On November 17, 1995, StorMedia had entered into a written supply agreement with Maxtor to manufacture "media," rigid thin film magnetic discs which store information, for use in Maxtor's hard disk drives. Aluminum substrates, like those manufactured by Cerion, are the platforms for these thin

film disks. On November 17, 1995, and thereafter, StorMedia's product had to be qualified by a specific date and in conjunction with other specific components so that Maxtor could provide hard disk drives that met the requirements of Maxtor's customers, and Maxtor's obligation to purchase StorMedia's media was contingent upon StorMedia's product meeting Maxtor's specifications and functional requirements. After entering into the supply agreement with Maxtor, from November 17, 1995, until at least May 24, 1996, StorMedia's media repeatedly failed to perform adequately, failed to meet Maxtor's functional requirements and failed to meet Maxtor's specifications, ultimately causing Maxtor itself to lose substantial business opportunities. Cerion received notice that it was about to lose StorMedia as a customer, due to StorMedia's inability to produce, from Cerion substrates disks, media that met industry standards and Maxtor's requirements. Prior to the offering, Cerion also was informed by its second largest customer, HMT, that it planned to reduce its orders from Cerion, because HMT would build its own substrate facility.

Plaintiffs alleged further the prospectus did not disclose the fact that, for several months prior to the offering, StorMedia failed to fulfill its supply arrangement with Maxtor Corporation, which subsequently led to the cancellation of StorMedia's contract with Cerion, although the prospectus represented that Cerion worked in close technical collaboration with its customers, including StorMedia, throughout the lengthy sales, manufacturing and supply cycles for Cerion's products and that Cerion was refining its customer service approach to monitor product performance as Cerion's products were incorporated into the manufacturing of products by its customers. Plaintiffs charged that the facts known to StorMedia regarding its problematic products supplied to Maxtor were known to Cerion, by virtue of the sibling relationship between StorMedia and Cerion, Nashua having been the former parent of StorMedia, thereby ensuring the flow of information from StorMedia to Cerion. The prospectus also failed to warn or inform investors that HMT already had informed Cerion that it would reduce drastically its orders for media to be purchased from Cerion by virtue of its own impending manufacture of substrate discs. Yet, the prospectus stated, in pertinent part, "[t]he loss of one or more of [Cerion's] customers *** *could* have a material adverse effect on [Cerion's] business, results of operations and financial condition."

Plaintiffs alleged in the alternative that such statements in its prospectus about Cerion's close technical collaboration with its customers, including StorMedia and HMT, and its monitoring the performance of products throughout their subsequent life cycle were

materially false and misleading if Cerion was unaware of the status of its business and did not in fact monitor the performance of its products.

Plaintiffs asserted that the prospectus contained materially false and misleading risk disclosures that warned only generally of general market conditions, but failed to disclose what Cerion then knew specifically and materially concerning the declining market for Cerion's products and the questionable status of its supply arrangements with StorMedia and HMT. Although the prospectus warned that various events "could" or "may" occur, and that there could be no assurance that Cerion's business would continue in its present state, it was materially misleading to caution that unfavorable events "might" happen when they already had occurred.

Blair, which received $4,018,560 in proceeds for its role as the lead underwriter for the offering, was charged with having violated its duty to investors to perform properly an independent due diligence investigation of Cerion prior to the offering; Blair was required to conduct an investigation into the business, operations, prospects, financial condition, and accounting and management control systems of Cerion; Blair also failed to investigate the status of Cerion's business with either HMT or StorMedia prior to the offering; and, in the course of its investigation, Blair obtained, or should have obtained, knowledge of the facts alleged, if it had acted with reasonable care.

The subject complaint described Nashua's role in the offering as the former parent of Cerion and StorMedia. Nashua was then in default under a $20 million loan agreement, which had increased its indebtedness from $33 million in 1994 to $53 million in 1995. In 1995, Nashua reported a $2.31 loss per share and planned a public offering of Cerion stock, which would eliminate its debt. Of the 3,838,000 shares sold in the offering, Nashua sold 2,223,000 of them and Cerion the remainder. Nashua secured $26,900,250 in proceeds, plus an additional $4,018,560 through Blair's exercise of its option to purchase additional stock. Cerion realized proceeds of $19,525,350, of which Nashua received the major share.

Six weeks after the initial public offering, after the market had closed on July 9, 1996, a Cerion press release disclosed that StorMedia had cancelled its outstanding purchase orders with Cerion due to a "recent slowdown at StorMedia." In reaction to the news, the price of Cerion stock decreased from $9 per share to $4.875 per share, a 46% decline.

On February 18, 1998, defendants moved to dismiss the subject complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996) (section 2—615)) on the same grounds

advanced in moving to dismiss the amended complaint. Blair filed its motion separately from other defendants. Defendants also contended that plaintiffs lacked standing to pursue their securities claims because of their aftermarket purchase of Cerion's common stock and, their Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1998)) claim should be dismissed for failure to plead loss causation and because the underwriter defendants are "regulated professionals" exempt from the Act. On May 6, 1998, following a hearing, the circuit court granted defendants' motions to dismiss with prejudice, holding that: the subject complaint failed to satisfy Illinois' fact-pleading rules, the prospectus "bespoke caution as a matter of law" and the failure to disclose Cerion's loss of 86% of its business did not constitute a material misstatement. For reasons that follow, we reverse and remand.

## I

■ Dismissals of complaints under section 2—615 are reviewable *de novo. Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill. App. 3d 593, 600, 694 N.E.2d 1108 (1998); *Harris v. Chicago Housing Authority*, 235 Ill. App. 3d 276, 277, 601 N.E.2d 1011 (1992). Grants of motions to dismiss require review of whether significant allegations of the complaint, if established, could entitle plaintiffs to relief. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996); *Peter J. Hartmann Co.*, 296 Ill. App. 3d at 600. No cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the complaint entitling plaintiffs to relief. *Bryson*, 174 Ill. 2d at 86-87; *Peter J. Hartmann Co.*, 296 Ill. App. 3d at 600.

Plaintiffs contend that the circuit court erred when it dismissed the subject complaint with prejudice, finding their fact pleading insufficient to overcome that protection afforded by the "bespeaks caution" doctrine and the federal "safe harbor" provided by SEC Rule 175 (17 C.F.R. § 230.175 (1995)), which the court held also protected defendants' prospectus.

Plaintiffs identify error in the circuit court's determination that allegations of Cerion's knowledge which they ultimately pled were inadequate. They assert that Cerion's knowledge is not an element of a claim under section 11 of the Securities Act of 1933, as a matter of substantive law, since the issuer of securities is absolutely liable for any material misstatements in, or omissions from, the registration statement, which it is required to sign under section 11(a)(1). The Supreme Court has held that, under section 11, a plaintiff who "purchased a security issued pursuant to a registration statement ***

need only show a material misstatement or omission to establish [a] prima facie case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 74 L. Ed. 2d 548, 555, 103 S. Ct. 683, 687 (1983).

Additionally, plaintiffs argue, section 12 of the Securities Act has similar minimal requirements to establish a cause of action that do not require pleading defendants' knowledge. Quoting *In re NationsMart Corp. Securities Litigation*, 130 F.3d 309, 318 (8th Cir. 1997), *cert. denied*, 524 U.S. 927, 141 L. Ed. 2d 696, 118 S. Ct. 2321 (1998) (*NationsMart*), plaintiffs maintain that "[f]raud and scienter are not elements of a § 12(2) claim." As a matter of substantive federal securities law, plaintiffs conclude, Cerion is absolutely liable for omitting from the registration statement the unquestionably material fact that it was about to lose over 80% of its sales by the time the registration statement became effective. The warning contained in a prospectus about problems that *may* adversely affect the issuer in the future does not insulate an issuer from Securities Act liability when the issuer already has encountered the material problems at the time of the offering, as alleged in the subject complaint. *Walsingham v. Biocontrol Technology Inc.*, [Current Transfer Binder] Fed. Sec. L. Rep. (CCH) par. 90,404, at 91,829 (W.D. Pa. December 1, 1998) ("bespeaks caution" doctrine and safe harbor inapplicable against statements made by defendants because "each defendant already knew of the [information] but concealed such information from the public"); *Robertson v. Strassner*, [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) par. 90,303, at 91,417 (S.D. Tex. October 7, 1998), quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1123 (10th Cir. 1997) ("bespeaks caution" doctrine inapplicable where defendants' misstatements concerned present facts: " 'Because several of the allegedly misleading statements referred to then-present factual conditions, or implied background factual assumptions a reasonable investor would regard the speaker as believing to be true, the "bespeaks caution" doctrine would be of no assistance to defendants as to those statements' "); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 560 (D. Colo. 1998), *motion granted*, 185 F.R.D. 313 (D. Colo. 1999) (defendants' cautionary statements contained in the prospectus did not "bespeak caution" where the complaint alleged that "[d]efendants misrepresented Celestial's current agreement with Perrier, identifi[ed] the factors that were not disclosed to investors at the time, and assert[ed] such factors preexisted the alleged misrepresentations"); *Rubinstein v. Collins*, 20 F.3d 160, 171 (5th Cir. 1994), *class cert. granted on remand*, 162 F.R.D. 534 (S.D. Tex. 1995) ("the inclusion of general cautionary language

regarding a prediction would not excuse the alleged failure to reveal known material, adverse facts").

In light of plaintiffs' allegation that defendants failed to disclose present facts or current conditions, the "bespeaks caution" doctrine simply does not apply. *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993), *cert. denied*, 510 U.S. 1073, 127 L. Ed. 2d 78, 114 S. Ct. 883 (1994) ("A prospectus stating a risk that such a thing *could* happen is a far cry from one stating that this *had* happened. The former does not put an investor on notice of the latter") (emphasis in original); *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 722 (N.D. Ill. 1995), *amended*, 165 F.R.D. 81 (N.D. Ill. 1996), *motion granted, granted in part & denied in part* (N.D. Ill. March 19, 1998) ("cautionary disclosures concerning the future performance of a product does [*sic*] not satisfy the obligation to disclose historical and current material facts").

The decisions in *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 648 N.E.2d 226 (1995), and *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 653 N.E.2d 968 (1995), upon which defendants rely are distinguishable. In *Adler*, plaintiffs challenged alleged oral misrepresentations made concerning a private placement memo. The information contained in the memo directly contradicted the oral misrepresentations allegedly made by defendants. Plaintiffs were unable to establish liability for the purported oral misstatements, given the adequacy of the written memo disclosures. In *Lagen*, plaintiffs claimed that defendants did not warn investors on impending real estate market decline. In contrast, plaintiffs in the present action claim that defendants failed to disclose that, prior to the offering, its two major customers currently were cancelling or significantly reducing future orders, which would have had a material impact on Cerion's future sales.

Nor is *In re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996), *cert. denied sub nom. Anderson v. Clow*, 520 U.S. 1103, 137 L. Ed. 2d 308, 117 S. Ct. 1105 (1997) (*In re Stac*), of any support to defendants. In *In re Stac*, plaintiffs alleged defendants had failed to warn that a competitor could introduce a competitive product that would impact Stac's sales, which would have been beyond Stac's actual knowledge, involvement or control. Here, plaintiffs allege that Cerion knew, but failed to disclose, that its two largest customers, StorMedia and HMT, at the time of the offering, already were cancelling their orders with Cerion or arranging for a supplanting source of supply. Plaintiffs do not claim that Cerion failed to "predict" some future event, namely, that its customers could cancel orders, but that

defendants failed to disclose the already occurring process of cancelling business.[1]

■ Here, despite the circuit court's recognition that the complaint alleged material misrepresentations concerning current conditions, having stated that it was "fully aware of the fact that it is the plaintiff's position here that we are dealing with *present existing* conditions as opposed to those things which could or might occur" (emphasis added), the court applied the "bespeaks caution" doctrine, disregarding authorities holding otherwise. As earlier noted, the subject complaint alleged that approximately 84% of Cerion's business was in jeopardy at the time of the offering and that defendants failed to identify specifically or disclose this fundamental current problem in the prospectus. It further alleges that defendants failed to disclose information concerning StorMedia's default since April of 1995 in its supply agreements, the continuation of which ultimately resulted in StorMedia's cancellation of its orders with Cerion. The materiality of such information in determining whether an investor would purchase Cerion's stock is clear.

Courts consistently have held that the "bespeaks caution" doctrine is a "narrow defense" and only applies to statements concerning future plans, forecasts or projections. *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1404-06 (7th Cir. 1995); *In re Boeing Securities Litigation*, [1998 Transfer Binder] Fed. Sec. L. Rep. (CCH) par. 90,285 at 91,322 (W.D. Wash. September 8, 1998) ("the bespeaks caution doctrine should be *applied narrowly*, and courts should dismiss claims based on the bespeaks caution doctrine *only where documents containing defendants' challenged statements include enough cautionary*

---

[1]Defendants' additional authorities relating to the "bespeaks caution" doctrine are likewise distinguishable. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 548-49 (8th Cir. 1997) (applying "bespeaks caution" doctrine where defendants provided explicit warnings directly addressing plaintiffs' claims); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1123 (10th Cir. 1997) (applying "bespeaks caution" doctrine, where plaintiff failed to allege that certain statements were "untrue when made, were later shown to be untrue, or had any impact on [defendant's] stock price when their falsity was disclosed"); *In re Donald J. Trump Casino Securities Litigation—Taj Mahal Litigation*, 7 F.3d 357, 371 (3d Cir. 1993), *cert. denied*, 510 U.S. 1178, 127 L. Ed. 2d 565, 114 S. Ct. 1219 (1994) (applying "bespeaks caution" doctrine only to allegations of forward-looking statements, but not to allegations concerning omissions of present fact); *In re Syntex Corp. Securities Litigation*, 95 F.3d 922, 929 (9th Cir. 1996) (applying "bespeaks caution" doctrine where plaintiffs failed to plead that the alleged misstatements were false when made).

*language that reasonable minds could not disagree that the challenged statements were not misleading"*). (Emphasis added.)

Defendants claim that the prospectus was "replete with specific, meaningful warnings about the precarious nature of Cerion's business," that Cerion was dependent upon a small number of customers, and that Cerion did not have long-term purchase commitments. These warnings, however, did not reveal the then-present, existing fact that Cerion's two major customers, StorMedia and HMT, had cancelled their business or were eliminating Cerion as a supplier of substrates. The "disclosures" or "cautionary statements" set forth in the prospectus offer no shield to defendants from liability for misstatements of present or current conditions, if proven, under the authorities previously cited. Defendants' prospectus falsely asserted that there was current strong demand for Cerion's products and that business was expanding so rapidly that Cerion might be unable to satisfy its customers' orders.[2] From the foregoing, a prospective investor could assume that Cerion's business was doing so well that it may have difficulty keeping pace with its customers' orders.

The circuit court's dismissal was in error. The supposedly cautionary statements in the prospectus did not adequately apprise prospective purchasers that Cerion was specifically facing the substantial and significant loss of its business with StorMedia and HMT as of May 24, 1996. The "bespeaks caution" doctrine cannot shield defendants' statements from liability where it is alleged that defendants possessed material adverse information which they failed to disclose at the time of the offering. Plaintiffs should be allowed to try these issues beyond the pleading stage.

## II

Plaintiffs next identify error in the circuit court's application of SEC Rule 175, the "safe harbor" rule, which applies to "forward-looking" statements. Forward-looking statements include projections, plans and statements of future economic performance. 17 C.F.R. § 230.175(c) (1999). The court's assertedly reversible error emanates from its application of Rule 175 in that the subject complaint alleged

---

[2]The following language appears in the prospectus in this regard:
"Expand Manufacturing Capacity. Consistent with strong industry growth, the Company believes that *potential demand for its aluminum disk substrates may exceed its current manufacturing capacity* \*\*\*. The Company also plans to add a new manufacturing facility in 1997 to meet the increasing demands of its customers while also allowing it to pursue new customer and product opportunities." (Emphasis added.)

the prospectus contained misrepresentations of the current facts showing StorMedia and HMT were cancelling their business or were eliminating Cerion as a supplier of substrates.

■ Federal authorities agree with plaintiffs' understanding of Rule 175. In *NationsMart*, plaintiffs claimed that defendants omitted certain material from the prospectus and failed to disclose material information obtained by the company prior to the offering. The district court dismissed plaintiffs' complaint, holding that plaintiffs were required to plead specific facts to overcome the Rule 175 safe harbor. The circuit court of appeals reversed in part, holding that "[f]orward-looking statements are not protected by Rule 175 if they are not generally believed, if they lack a reasonable basis, *or if the speaker knows of undisclosed facts which seriously undermine the accuracy of the statement*." (Emphasis added.) *NationsMart*, 130 F.3d at 316, citing *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied*, 496 U.S. 943, 110 L. Ed. 2d 676, 110 S. Ct. 3229 (1990) (*In re Apple*). Where plaintiffs allege that a fact was known at the time the prospectus was issued, as opposed to a prediction of a future event, Rule 175 safe harbor provisions do not apply as a matter of law. *Endo v. Albertine*, 863 F. Supp. 708, 717-22 (N.D. Ill. 1994). See also *In re Stac*, 89 F.3d at 1406, quoting *In re Convergent Technologies Securities Litigation*, 948 F.2d 507, 515 (9th Cir. 1991), quoting *In re Apple*, 886 F.2d at 1115 (distinguishing between " ' "knowing that any product-in-development may run into a few snags, and knowing that a particular product has already developed problems so significant as to require months of delay" ' ").

■ Defendants claim that plaintiffs are attempting to evade the "high pleading standard" of Rule 175. The safe harbor enacted by the Private Securities Litigation Reform Act (PSLRA) (15 U.S.C. § 77z—2(c)(4) (Supp. 1998)) specifically states: "Effect on other safe harbors. The exemption provided for in paragraph (1) shall be in addition to any exemption that the Commission *may establish* ***." (Emphasis added.) See 15 U.S.C. § 77z—2(c)(1) (Supp. 1998). Defendants' authorities do not state that Rule 175 requirements supersede those of the PSLRA. Instead, Rule 175 provisions have been incorporated into the PSLRA's safe harbor, which specifically requires identification of forward-looking statements. See also H. Bloomenthal and Holme Roberts & Owen, Securities Law Handbook § 16.03 (1999 ed.) ("the SEC's safe harbor presumably is preempted for the most part as it is difficult to comprehend how it could apply protection not available under the PSLRA").

The circuit court erred in holding that plaintiffs' complaint insufficiently pleaded facts necessary to overcome defendants' purported cautionary statements within the safe harbor frame of reference.

## III

Plaintiffs next assign reversible error to the circuit court's dismissal of the subject complaint for allegedly failing to allege facts demonstrating that Cerion "knew" its registration statement was false when issued.

■ Knowledge of falsity is not an element of a cause of action under either section 11 (*Herman & MacLean v. Huddleston*, 459 U.S. at 382, 74 L. Ed. 2d at 555, 103 S. Ct. at 687) or 12(a)(2) (*NationsMart*, 130 F.3d at 318) of the Securities Act of 1933. The language of the statute prescribes no knowledge requirement and, indeed, the Supreme Court has construed the statutes as written. Defendants, as well, implicitly recognize that knowledge is not an element of plaintiffs' claims.

Under Illinois fact-pleading rules, a plaintiff is required to plead only facts that are " 'necessary for the plaintiff to recover.' " *Ward v. Community Unit School District No. 220*, 243 Ill. App. 3d 968, 973, 614 N.E.2d 102 (1993) (*Ward*), quoting *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308, 430 N.E.2d 1005 (1981). Plaintiffs were not required to plead Cerion's knowledge of the falsity of the registration statement under sections 11 and 12(a)(2); the complaint should not have been dismissed for failing to plead such knowledge.

Notwithstanding the foregoing, the circuit court directed plaintiffs to plead Cerion's knowledge at the time of the initial public offering (IPO). Plaintiffs attempted to comply, based on their investigation and on pleadings filed in other fora which were attached to the complaint and incorporated therein. Knowledge is an ultimate fact which would have been more than adequately pled in the subject complaint under *Ward*, even if pleading knowledge had been required as an essential element of the claims asserted.[3]

The subject complaint specifically alleges that Cerion was largely

---

[3]Defendants' reliance in this case upon a series of cases where knowledge was an essential element of the claim asserted is misplaced. These authorities include *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (1995) (plaintiffs' fraud claims required to be pled adequately, "knowledge or belief by the maker [of the statement] that the statement was false"); *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125 (1995); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (requiring plaintiffs to establish knowledge as an essential element for a claim of fraud: "Scienter is a crucial element of the securities fraud claims in this case"); *In re Syntex Corp. Securities Litigation*, 95 F.3d 922, 929, 930 (9th Cir. 1996) (applying the heightened pleading standard for fraud claims); *Pesek v. Discepolo*, 130 Ill. App. 3d 785, 787, 475 N.E.2d 3 (1985) (allegations of fraud required knowledge of misconduct committed by

dependent upon StorMedia, accounting for approximately 47% of its business in 1995. StorMedia, in turn, substantially depended upon purchases from Maxtor. Maxtor accounted for 45% of StorMedia sales in 1995. On November 17, 1995, it is alleged, StorMedia had entered into an agreement with Maxtor. Cerion's sales to StorMedia were directly contingent upon StorMedia's success in qualifying its product by a specific date for use by Maxtor. Therefore, the subject complaint asserts Cerion understood that StorMedia's sales, and consequently Cerion's own, were contingent upon Maxtor's acceptance of StorMedia's products. Prior to the offering, StorMedia repeatedly failed to conform its products to Maxtor's specifications. By April of 1995, plaintiffs allege, StorMedia lacked the resources and ability to fulfill its supply obligations to Maxtor. Cerion had failed to disclose that, prior to the offering, its business arrangement with StorMedia was about to be cancelled due to the problems StorMedia was encountering with Maxtor.

Additionally, Cerion's registration statement and prospectus also failed to disclose that Cerion was facing material reductions for orders of its substrates because HMT, developing in-house manufacture of the product, was drastically reducing its orders, materially impacting Cerion's ultimate viability.

The subject complaint adequately alleged that Cerion's registration statement and prospectus misled investors as to the good standing of these two accounts. Language contained in the prospectus stating that Cerion was dependent upon a small number of customers, that it did not have long-term purchase commitments, and that there could be "no assurance" customers will continue to place orders with the company cannot shield defendants from liability for failing to disclose the allegedly already true circumstances that StorMedia and HMT had cancelled their business or were eliminating Cerion as a supplier.

Defendants argue that Cerion's relationship with its customers was merely "technical" and, therefore, that it could not have been aware of StorMedia's cancellation of its order. Plaintiffs' complaint asserts, however, that the prospectus repeatedly touted the "multi-tiered" "close" working relationship of Cerion's sales, marketing,

---

the child); *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 403, 408, 409, 667 N.E.2d 1296 (1996) (complaint dismissed where the only "facts" alleged by plaintiff were "her own subjective belief" that she was the leading candidate for a job that she did not receive).

customer service, technical and senior management staff with those of its customers.[4]

Defendants' argument, that Cerion could not be aware of the scale of StorMedia's business by indicating that "customers *** could cancel even existing orders," does not neutralize plaintiffs' allegations that Cerion, at the time of the offering, failed to disclose the evaporation of its sales to StorMedia, as well as its business relationship with HMT. It was error to dismiss the case on these pleadings.

## IV

■ As an alternative ground for affirmance, defendants claim that "plaintiff purchased in the aftermarket rather than in the public offering." This issue was not a basis for the lower court's dismissal and need not be considered on appeal; had it been so, the argument fails because it ignores the allegations contained in the complaint, the language of the Securities Act and is contrary to governing case law.

The subject complaint pled that each of the three plaintiffs purchased Cerion common stock on the offering or traceable to the offering and pursuant to the prospectus. The complaint specifically pled

---

[4]In this regard, the prospectus advises:

"The Company's technical collaboration with its customers and suppliers during the design phase of new thin film disks facilitates customer qualification of its products and improves the Company's ability to rapidly reach cost-effective, high-volume manufacturing. In addition, *the Company receives ongoing feedback on the performance of its aluminum disk substrates, allowing Cerion to provide better products and customer service. The Company also works with its suppliers to optimize their products' performance in the Company's manufacturing process.*"

The prospectus further represented:

"To meet these demands, the Company uses a system of multi-tiered communication for sales, marketing and customer service. Senior management of the Company, and production, operation and engineering personnel, directly market and interact with their counterparts at the Company's customers. *The Company believes that this multi-tiered approach has resulted in strong, active relationships with both customers and suppliers and has helped the Company pursue close technical collaboration with its customers during the design phase of new products and throughout the products' subsequent life cycle.* To supplement its multi-tiered approach, the Company recently created the position of Customer Service Director, who is responsible for bringing coordination and timely closure to customer service issues." (Emphasis added.)

that one of the plaintiffs, Pickup, purchased shares on the date of the offering, within minutes or, at most, hours of the first transaction in Cerion stock on May 24, 1996. The stock, which Pickup and others similarly situated allegedly purchased, could have been the same stock registered under the registration statement.[5]

These allegations sufficiently established that Pickup and other class members have standing to recover under section 11 of the Securities Act. *In re First Merchants Acceptance Corp. Securities Litigation*, No. 97 C 2715 (N.D. Ill. November 2, 1998). Other authorities afforded section 11 protection to both IPO and aftermarket purchasers who can trace their shares to the IPO. See *Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967); *Harden v. Raffensperger, Hughes & Co.*, 933 F. Supp. 763, 766 (S.D. Ind. 1996); *Lilley v. Charren*, 936 F. Supp. 708, 715 (N.D. Cal. 1996); *In re U.S.A. Classic Securities Litigation*, No. 93 Civ. 6667 (S.D.N.Y. June 10, 1995); *Kirkwood v. Taylor*, 590 F. Supp. 1375, 1377-83 (D. Minn. 1984); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875-76 (N.D. Cal. 1986); *In re LILCO Securities Litigation*, 111 F.R.D. 663, 671 (E.D.N.Y. 1986).

Defendants suggest that *Gustafson v. Alloyd Co.*, 513 U.S. 561, 131 L. Ed. 2d 1, 115 S. Ct. 1061 (1995) (*Gustafson*), has eliminated recovery under section 11 for all aftermarket purchasers, including those whose shares are traceable to the IPO, relying on an early line of district court cases. *Gustafson* did not concern a section 11 claim but merely considered whether the term "prospectus" in section 12(2) (not to be confused with section 12(a)(2)) prohibited a private securities purchaser from pursuing a claim pursuant to section 12(2) of the Securities Act; it did not address the standing of publicly traded securities purchasers whose stock was issued pursuant to a "prospectus" and "registration statement," as defined in section 11 of the Securities Act.

Further, the Supreme Court has found Congress intended that sections 11 and 12 protect investors who purchase stock at a price affected by misleading offering documents, " 'although they may never actually have been seen by the prospective purchaser, because of their wide dissemination, determine the market price of the security.' " *Gustafson*, 513 U.S. at 576, 131 L. Ed. 2d at 16, 115 S. Ct. at 1070, quoting H.R. Rep. No. 85, 73d Cong., 1st Sess. 10 (1933). Section 11 remedies are accorded "to all purchasers" of stock issued pursuant to a misleading registration statement " 'regardless of whether they bought their securities at the time of the original offer or at some

---

[5]The cover page of the prospectus stated: "Prior to this offering, there has been no public market for the Common Stock of the Company."

later date.' " *Barnes v. Osofsky*, 373 F.2d at 273, quoting H.R. Rep. No. 85.[6] The majority of cases after *Gustafson* allow application of section 11 claims to aftermarket purchases.[7]

The Illinois Securities Law must be construed similarly. In *Delaney*

---

[6]Section 11 applies to purchasers who "acquired the security after the issuer has made generally available to its security holders an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. § 77k(a)(4) (1994). Those who acquired their securities more than a year after the IPO have a cognizable claim under section 11. See also 9 L. Loss & J. Seligman, Securities Regulation 4249 (3d ed. 1992) ("Suit may be brought by any person who acquired a registered security, whether in the process of distribution or in the open market") (emphasis omitted).

Section 11 damage provisions also recognize that investors who purchased securities other than in the offering have a cognizable claim. See 15 U.S.C. § 77k(e) (1994) (damages shall be measured by "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought"); 15 U.S.C. § 77k(g) (1994) ("[i]n no case shall the amount recoverable under this section exceed the price at which the security was offered to the public"). Section 11 standing is not limited solely to investors who purchased on the offering, otherwise the portions of section 11(a) defining the period of presumptive reliance and references to persons who acquire the security after a year, as well as the statutory limitation on damages, would be rendered meaningless.

[7]*In re Fine Host Corp. Securities Litigation*, 25 F. Supp. 2d 61, 66 (D. Conn. 1998) (" '[i]t has been the law in this Circuit for over thirty years that a plaintiff who can trace their [*sic*] securities to a registered offering has standing to sue under the Securities Act for a defect in that registration[ ]' [citation]"); *In re WebSecure, Inc. Securities Litigation*, 182 F.R.D. 364, 368 (D. Mass. 1998) ("To plead proper standing under § 11, a plaintiff may plead a purchase in the public offering itself or a purchase traceable to the offering and its Registration Statement"); *In re MobileMedia Securities Litigation*, 28 F. Supp. 2d 901, 923 (D.N.J. 1998) ("[t]o state a claim under Section 11, a plaintiff must allege: 1) The plaintiffs purchased securities traceable to an effective registration statement"); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 556 (D. Colo. 1998) ("I find, notwithstanding *Gustafson*, that § 11 extends not only to persons who buy 'in the [o]ffering,' but to all persons who acquired stock traceable to a public offering conducted via a misleading

*v. Happel*, 185 Ill. App. 3d 951, 954-55, 542 N.E.2d 46 (1989), the court extended the provisions of the act to subsequent purchasers, but not to "assignees or transferees of the purchaser." The courts require that the act "be liberally construed to better protect the public from deceit and prevent fraud in the sale of securities." *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790, 803, 629 N.E.2d 520 (1993). Here, Pickup purchased Cerion common stock on the first day of the public offering. His having paid more per share for his stock than the initial offering price and having purchased from an underwriter other than Blair does not relieve defendants of alleged liability under the act. The alternative ground for affirmance must be reversed, as well.

## V

The circuit court is claimed to have committed reversible error in failing to permit plaintiffs to replead upon granting defendants' motions to dismiss. In light of our disposition of this case, we need not consider this additional ground for reversal.

The circuit court's order dismissing the subject complaint is reversed and remanded for the reasons set forth above.

Reversed and remanded.

THEIS, P.J., and HOURIHANE, J., concur.

---

registration statement"); *In re Stratosphere Corp. Securities Litigation*, 1 F. Supp. 2d 1096, 1119 (D. Nev. 1998); *Adair v. Bristol Technology Systems, Inc.*, 179 F.R.D. 126, 133 (S.D.N.Y. 1998) ("To limit liability only to buyers in the IPO and not to buyers who can trace their shares to the registration statement allows the issuers to escape a margin of liability for which § 11 was drafted to cover. Defendant's argument that Plaintiffs lack standing fails in light of the statutory text and legislative history").