# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Greer v. Advanced Equities, Inc.*, 2012 IL App (1st) 112458

---

| | |
|---|---|
| Appellate Court Caption | CARL C. GREER and THOMAS A. FLOYD, Plaintiffs-Appellees, v. ADVANCED EQUITIES, INC., KEITH DAUBENSPECK, and DWIGHT BADGER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-2458 |
| Filed | January 31, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiffs purchased stock through defendants and then filed an action containing an allegation of common-law fraud based on defendants' alleged oral misrepresentations and defendants brought an appeal pursuant to Supreme Court Rule 308, which presented the certified question of whether a stock purchaser is barred as a matter of law from pleading in a common-law fraud action that it relied on oral statements when purchasing the stock if the purchaser signed a subscription agreement containing a nonreliance clause stating that the purchaser is not relying on any oral representation made in connection with the purchase, the appellate court answered the certified question in the affirmative. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2010-L-002913; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Certified question answered. |

Counsel on Appeal

John B. Simon, Howard S. Suskin, and Mark D. Sokol, all of Jenner & Block LLP, of Chicago, for appellants.

Michael Dockterman, John A. Luburic, and Patrick C. Frye, all of Edwards Wildman Palmer LLP, of Chicago, for appellees.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Quinn and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1        This appeal presents the following certified question:

"Where a purchaser of securities contractually agrees through a non-reliance clause that it is not relying on any oral representation made in connection with its purchase of the securities, is the purchaser barred as a matter of law from thereafter pleading in an action alleging common law fraud that it relied on oral statements when purchasing the securities?"

Our answer is yes.

¶ 2        The facts of this case are straightforward. In 1999, plaintiffs bought shares of stock in Pixelon, Inc., from defendants. Prior to the purchase, plaintiffs received a document called a private placement memorandum (PPM) from defendants, which provided details about the company and the proposed investment. Plaintiffs then signed a contract known as a subscription agreement in order to consummate the stock purchase. The subscription agreement contained the following clause, which is known as a "nonreliance" clause:

"In evaluating the suitability of an investment in [Pixelon], the undersigned [,*i.e.*, plaintiffs], having been delivered a copy of the [PPM], acknowledges that he has relied solely upon the [PPM], documents and materials submitted therewith, and independent investigations made by the undersigned in making the decision to purchase the Shares subscribed for herein, and acknowledges that no representations or agreements (oral or written), other than those set forth in the [PPM], have been made to the undersigned with respect thereto."

¶ 3        According to plaintiffs, not long after they signed the subscription agreement they allegedly discovered that certain material statements that defendants had made orally and in writing about Pixelon were untrue. Plaintiffs eventually filed suit, first in federal court and then, after that lawsuit was dismissed for reasons not relevant here, in the circuit court of Cook County. In the circuit court, plaintiffs advanced several causes of action, but the only one that is relevant to the certified question is common-law fraud based on defendant's

alleged oral misrepresentations. Defendants moved to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)).

¶ 4 This being an appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010), we strictly limit our review to the certified question, which we consider *de novo* as a matter of law. See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 58 (2007). We accordingly take no position on the merits of the underlying case. The narrow question at issue is the legal effect of this kind of nonreliance clause on a common-law fraudulent oral misrepresentation claim. Defendants argue that Illinois case law establishes a rule that categorically bars a common-law fraudulent oral misrepresentation claim involving securities whenever there is a nonreliance clause such as the one in this case. Plaintiffs, on the other hand, argue that such a fraud claim is only barred when the alleged oral misrepresentation contradicts another representation in the written instrument that contains the nonreliance clause.[1]

¶ 5 At bottom, the certified question is about the meaning of one element of the common-law tort of fraudulent misrepresentation. The elements of the tort are (1) a false statement of material fact, (2) known or believed to be false by the person making it, (3) an intent to induce the plaintiff to act, (4) action by the plaintiff in justifiable reliance on the truth of the statement, and (5) damages caused by such reliance. See, *e.g.*, *Doe v. Dilling*, 228 Ill. 2d 324, 342-43 (2008). At issue is the fourth element, and the legal question is this: can plaintiffs claim to have justifiably relied on an oral representation while simultaneously disclaiming such reliance in the nonreliance clause of the written subscription agreement?

¶ 6 We have previously considered this issue in three cases. In *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117 (1995), the plaintiffs received a PPM that detailed the risk of the proposed investment and then signed a subscription agreement that contained a warranty to the effect that the plaintiffs "had read the PPM and made the decision to invest *relying solely on* the information contained in the PPM and not in reliance on any other information." (Emphasis added.) *Id.* at 126. When the investment soured, the plaintiffs sued and alleged, among other things, fraudulent oral misrepresentation. See *id.* We held as a matter of law that the plaintiffs could not have justifiably relied on any of the alleged oral misrepresentations because of the nonreliance clause in the subscription agreement. See *id.* at 126-27. Although the plaintiffs claimed that clauses in the PPM and the subscription agreement that encouraged plaintiffs to "ask questions" about and "verify the accuracy" of the PPM justified their reliance on outside representations, we rejected this argument, noting that "[t]o accept the plaintiffs' contention is to hold the written agreement for naught." *Id.* at 127.

¶ 7 We next discussed the *Adler* rule, as we will refer to this principle for ease of reference, in *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450 (2004). In that case, the plaintiffs bought shares in a company from the defendants via a subscription document that contained

---

[1]Plaintiffs actually use the majority of their response brief on appeal to argue that we should decline to answer the certified question. Given that plaintiffs unsuccessfully made this same argument in opposition to defendants' Rule 308 petition for leave to appeal, which we granted, we will not revisit it here.

a nonreliance clause, which read: "In evaluating the suitability of an investment by the undersigned Company, the undersigned has relied solely upon the materials made available to the undersigned at the undersigned's request and independent investigations made by the undersigned in making the decision to purchase the Preferred Membership Interests subscribed for herein, and acknowledges that no representations or warranties (oral or written), have been made to the undersigned with respect thereto." (Internal quotation marks omitted.) *Id.* at 453. The subscription documents also contained an integration clause. See *id.* When plaintiffs allegedly learned that some representations were false, they attempted to rescind the transaction and, failing that, filed a lawsuit alleging, among other things, common-law fraudulent oral misrepresentation. See *id.* at 453-54. In our opinion, we discussed both *Adler* and the federal case *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000), ultimately reaffirming *Adler* and holding that "[p]laintiffs' reliance was unreasonable as a matter of law" because the nonreliance clause disclaimed any reliance on the defendants' representations. *Tirapelli*, 358 Ill. App. 3d at 458. This conclusion followed from the general rule that, "[a]lthough normally a question of fact, a court can determine reasonable reliance as a matter of law when no trier of fact could conclude that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." (Internal quotation marks omitted.) *Id.* at 456.

¶ 8        We analyzed a similar situation in *Benson v. Stafford*, 407 Ill. App. 3d 902 (2010). Revisiting *Tirapelli*, *Rissman*, and *Adler*, we considered whether the existence of a nonreliance clause "automatically defeat[s] an allegation of justifiable reliance." *Id.* at 922. As in *Adler* and *Tirapelli*, we again found that the nonreliance clause was fatal to the plaintiff's fraud claim. See, *e.g.*, *id.* at 927 ("[T]he fraud cannot occur, because the parties have agreed that there was no reliance, a necessary element for fraud." (Emphasis omitted.)). We also came to two important conclusions. First, we reaffirmed the *Adler* rule and noted that it was an "automatic rule precluding damages for fraud based on oral representations in the presence of a nonreliance clause." *Id.* at 924. Second, we distinguished the *Adler* rule from the similar federal rule as discussed in Judge Rovner's concurrence in *Rissman*, which as we will see below has important consequences for plaintiffs' arguments in this case. See *id.* (comparing *Rissman* and *Tirapelli*).

¶ 9        Based on *Benson*, *Tirapelli*, and *Adler*, the law on this point seems quite clear: if a purchaser signs an agreement containing a nonreliance clause that disclaims reliance on any oral representations by the seller, then the purchaser cannot thereafter maintain a cause of action for common-law fraudulent oral misrepresentation. This is a logical rule, given that it is hardly justifiable for someone to rely on something that they have agreed not to rely on, and without justifiable reliance there can be no fraud. Even so, plaintiffs make two arguments that we will examine in order to clarify the scope of the *Adler* rule. Plaintiffs assert that the *Adler* rule should not, in fact, be applied in all common-law fraudulent oral misrepresentation cases in which a nonreliance clause exists. In plaintiffs' view, the *Adler* rule only bars claims that are based on oral misrepresentations that contradict written representations such as those contained in the PPM. The scope of the rule matters for this case because plaintiffs' common-law fraudulent oral misrepresentation claim is based in large part on defendants' oral reiteration or confirmation of allegedly false written

-4-

representations that are contained in the PPM, which means that defendants' alleged oral misrepresentations do not contradict their written representations and plaintiffs' claim would therefore evade the *Adler* rule as plaintiffs interpret it. Plaintiffs base their argument on both our precedent and federal law, which we will examine separately.

¶ 10   Regarding our own precedent, plaintiffs' argument is essentially that *Adler*'s holding depended on contradictions between the oral and written representations in that case. Contrary to plaintiffs' argument, however, our decision in *Adler* did not depend on any contradiction between oral and written representations. Rather, the holding in *Adler* was grounded in the irreconcilable contradiction between the existence of the nonreliance clause, which disclaimed reliance on any information not contained in the PPM, and the plaintiffs' claims that they had, in fact, relied on information outside of the PPM. See *Adler*, 271 Ill. App. 3d at 126-27. Plaintiffs are therefore only partially correct: *Adler*'s holding did depend on a contradiction, but it was not the same contradiction as the one that plaintiffs rely on for their argument in this case.

¶ 11   Plaintiffs also cite *Olczyk v. Cerion Technologies, Inc.*, 308 Ill. App. 3d 905, 913 (1999), but their reliance is misplaced. *Olczyk* dealt in part with questions surrounding the application of the "bespeaks caution" doctrine, which is a securities-related defense that precludes an investor from justifiably relying on statements in a prospectus when those statements are accompanied by warnings about events that could occur in the future and affect the investment. See generally *id.* at 912-15. In that case, we summarily distinguished *Adler*, merely noting in passing that *Adler* had little to do with the facts at issue in *Olczyk*. See *id.* at 913. We did not analyze *Adler* or explain its rule further, so *Olczyk* has no impact on the development of the *Adler* rule.

¶ 12   Even if we were to assume for purposes of argument that, as plaintiff would have it, the *Adler* rule was originally limited to its facts, *Tirapelli* and *Benson* have since demonstrated that the *Adler* rule applies even where there is no contradiction between oral and written representations. In both *Tirapelli* and *Benson* there was no indication that such a contradiction is necessary in order to apply the rule, and in fact *Benson* does not mention a contradiction between the oral and written representations at all. See *Benson*, 407 Ill. App. 3d at 920-28. The key factor in all three cases is the existence of the nonreliance clause. Plaintiffs argue that the existence of the clause should only form a single factor in a detailed factual inquiry regarding justifiable reliance, citing *Benson*'s statement that "[o]ne factor that courts have considered in analyzing justifiable reliance is the presence of a nonreliance clause in a contract between the parties." *Id.* at 922. Plaintiffs miss the lesson of the results in *Benson*, *Tirapelli*, and *Adler*: while it is true that the existence of a nonreliance clause can be *a* factor to consider in common-law fraud cases, such a clause is *dispositive* if it disclaims reliance on oral representations and a plaintiff's claim is premised on an oral misrepresentation. We can certainly imagine circumstances in which a nonreliance clause might not be dispositive, for example if the clause merely disclaimed reliance on written representations but was silent as to oral representations. Yet such a scenario is not at issue here, so that is a question for another case. As far as it is applied to oral representations and the type of nonreliance clause at issue in this case, however, the rule of *Adler* and its progeny are clear: if a nonreliance clause disclaims reliance on oral representations, then a plaintiff

may not claim justifiable reliance on them.

¶ 13   Alternatively, plaintiffs observe that the *Adler* rule was originally imported from federal law, so they ask us to consider federal cases and reevaluate the scope of the rule. Plaintiffs cite several federal district court cases in support, noting that federal courts only bar fraud claims when they are based on conflicting oral and written representations. See, *e.g.*, *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F. Supp. 2d 897, 909 (N.D. Ill. 2006) (noting that "the Seventh Circuit's rejection of the fraud claim in *Rissman* was based, not on the mere presence of the nonreliance clause, but on the presence of the nonreliance clause in conjunction with a provision that clearly contradicted the plaintiff's prior statement").

¶ 14   There are two problems with this argument. First, as we mentioned above, *Benson* and *Tirapelli* made clear that Illinois state law as expressed in the *Adler* rule is distinct from federal treatment of the same issue. See *Benson*, 407 Ill. App. 3d at 924. Given that federal interpretations of Illinois law are not binding on Illinois courts, we need not consider these cases as anything other than persuasive authority. See *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977) ("The general rule is that decisions of United States district and circuit courts are not binding upon Illinois courts."). This is particularly true given that plaintiffs offer only trial court opinions in support of their position, all but one of which are unpublished and were issued prior to 2007. By rule, the unpublished cases have no precedential value. See *Centerpoint Properties Trust v. Olde Prairie Block Owner, LLC*, 398 Ill. App. 3d 388, 394 (2010) (citing Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) (prohibiting citation of unpublished federal cases issued before January 1, 2007)).

¶ 15   Second, the cases that plaintiffs rely on no longer accurately reflect the state of federal law on this subject. In *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 726 (7th Cir. 2008), the Seventh Circuit explained the difference between the effect of a nonreliance clause (which the court colorfully refers to as " 'big boy' clauses (as in 'we're big boys and can look after ourselves')" (see *id.* at 724)) in actions for breach of contract and tort actions for fraud. After finding that the nonreliance clause was enforceable as a matter of contract law, the Seventh Circuit observed:

"And if it weren't [contractually enforceable], that would not save the day for [the plaintiff]. For its suit is a suit for fraud, and the significance of the no-reliance clause, which does not depend on its enforceability in contract law, is that *its language* and the circumstances of its negotiation render [the plaintiff's] reliance on [the defendant's] supposed oral misrepresentations unreasonable as a matter of law. The principle behind a no-reliance clause is, as this court explained in [*Rissman*, 213 F.3d at 384], 'functionally the same as a doctrine long accepted in this circuit: that a person who has received written disclosure of the truth may not claim to rely on contrary oral falsehoods.' " (Emphasis added.) *Id.* at 726.

See also *id.* at 723 ("If reliance on the allegedly fraudulent statements *** is negated by the no-reliance clause, [the plaintiff's] fraud claim evaporates ***."). It has always been uncertain how strongly the Seventh Circuit adhered to *Rissman*'s caveat against blanket application the *Adler* rule, given that the caveat originally appeared in a concurrence rather than the majority opinion. See *Rissman*, 213 F.3d at 389 (Rovner, J., concurring). The upshot of *Extra Equipamentos* is that the Seventh Circuit seems to have disavowed the position that

plaintiff advocates for and now appears to be in accord with *Adler* on the subject.

¶ 16        Taking all of the above discussion into account, we reaffirm our holdings in *Benson*, *Tirapelli*, and *Adler*, and we answer the certified question in the affirmative. With that said, we note that our answer is necessarily limited to the situation presented by the certified question, that is, to a situation in which a purchaser of securities pursues a common-law fraud claim based on alleged oral misrepresentations and there exists an applicable written instrument that contains a nonreliance clause disclaiming reliance on oral misrepresentations. We express no opinion on any other scenario. See *Barbara's Sales*, 227 Ill. 2d at 58.

¶ 17        Certified question answered.