2020 IL App (1st) 190339-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
June 30, 2020

No. 1-19-0339

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| VEERASIKKU BOMMIASAMY, M.D., and V. BOMMIASAMY, M.D., S.C., | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 18 L 1501 |
| v. | ) ) | |
| | ) | The Honorable |
| KEVIN J. CONWAY, | ) ) | Daniel J. Kubasiak, Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1 *Held:* Trial court properly entered summary judgment where defendant attorney's alleged legal malpractice was not a proximate cause of damages, because, regardless of earlier attorney's alleged malpractice, summary judgment would have been entered against plaintiffs in underlying suit for fraudulent inducement, tortious interference with contract, and tortious interference with prospective economic advantage.

¶ 2 The plaintiffs, Veerasikku Bommiasamy, M.D. (plaintiff), and V. Bommiasamy, M.D., S.C. (VBMD), appeal the trial court's entry of summary judgment in favor of the defendant, Kevin J. Conway, on the plaintiffs' amended verified complaint alleging legal malpractice. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4        The summary judgment record in this case discloses the following facts pertinent to this appeal, which we set forth in the light most favorable to the plaintiffs as the non-moving party.

¶ 5                                A. The Hospital Lawsuit

¶ 6        The plaintiff is an emergency medicine physician who, from 1977 to September 2002, worked in the emergency department at St. Mary's Hospital (the Hospital) in Streator, Illinois. In 1982, he entered into a contract (in the name of VBMD, his medical corporation) with the Hospital to serve as the medical director of its emergency department and its ER physician service provider. Thus, the plaintiff personally worked as an ER physician and was also responsible for hiring other ER physicians, who were independent contractors, to ensure the Hospital's emergency department was always staffed. The plaintiff and the Hospital renewed their contract periodically, with the final contract being set to expire on October 4, 2002.

¶ 7        In early 2001, the Hospital's executive vice president and administrator, Mark O'Halla, discussed with the plaintiff that the Hospital was considering having a different physician group take over as its ER physician service provider. The plaintiff told O'Halla that he would be willing to agree to terminate his existing contract prior to October 4, 2002, under certain conditions. According to the plaintiff, his conditions were that the new ER service provider must allow him to affiliate with it for as long as it had a contract with the Hospital, pay his malpractice tail coverage, and treat him well and fairly. Also, he required assurance that his staff privileges at the Hospital would not be terminated if he stayed with the new group (since paragraph 11.6 of his then-existing contract provided that, upon its expiration or termination, his medical staff membership and clinical privileges also terminated automatically).

¶ 8        Several physician groups were ultimately involved in the bidding for the contract, one of

which was Emergency Medical Experts, Ltd. (EME), which also did business under the name Emergency Medical Specialists of Streator (EMSS). The principals of EME were Ted Patras, M.D., and James Klein, M.D. The plaintiff met with Dr. Patras and Dr. Klein in about June 2001. According to the plaintiff, they orally promised him that if he terminated his contract early and supported EME in getting a contract with the Hospital, EME would employ him as an independent-contractor physician at the Hospital for as long as EME had a contract to be the ER physician services provider there. Also, according to the plaintiff's deposition testimony, O'Halla also told him that he could "stay on" or "remain on" as a physician at the hospital "as long as EME or EMSS remained the contract ER physician services provider."

¶ 9        On July 10, 2001, the plaintiff and the Hospital entered into a written agreement to terminate the plaintiff's existing contract, effective that day. That written agreement, which was four paragraphs in totality, included the following provision: "The Hospital agrees that Dr. Veerasikku Bommiasamy's Medical Staff privileges will not be terminated pursuant to paragraph 11.6, and shall remain in effect so long as he maintains affiliation with EMSS."

¶ 10       Also on July 10, 2001, the Hospital and EME entered into a separate written agreement for EME to serve as the Hospital's new ER physician service provider. That agreement contained the following provision: "All physicians provided by the Corporation must be acceptable to the Hospital. EMSS shall remove from service to the Hospital, within thirty (30) days, any physician who the Hospital deems unacceptable." The agreement was to be for a three-year term, but it also provided that it could be terminated by either party upon 180 days written notice to the other.

¶ 11       The plaintiff began working for EME at the Hospital as an independent contractor, with his first shift being July 10, 2001. The plaintiff did not have any written contract with EME. EME did purchase and pay for a tail coverage policy for the plaintiff and VBMD.

¶ 12 The plaintiff continued working for EME at the Hospital through September 9, 2002. As of that time, he was thinking about opening a medical laboratory in Streator and had apparently told this to several other physicians. In the operative fourth amended complaint in his ensuing lawsuit, the plaintiff alleged that, "in September 2002, upon learning that [the plaintiff] was contemplating opening a medical laboratory in Streator, Illinois, which would compete with the laboratory services offered by the Hospital, O'Halla threatened [the plaintiff] that he would prevent him from working further as an ER physician at the Hospital if he went through with his plans to open the laboratory." In his deposition, the plaintiff testified that, on September 9, 2002, he had a conversation with O'Halla in which O'Halla said, "I heard you are going to start a medical lab." The plaintiff responded that he had not started a lab, but he confirmed that he was "thinking about it." O'Halla then told the plaintiff that he needed to leave the Hospital's premises. O'Halla also said to the plaintiff that if he opened a lab, "I will make your life so miserable, you won't know what you are getting into. I will make a financial disaster for you."

¶ 13 After this conversation with O'Halla, the plaintiff went to the emergency room and spoke with Dr. Klein. Dr. Klein advised him to leave the premises and said that he and Dr. Patras would speak to O'Halla to resolve the matter. The plaintiff then left the Hospital premises. Although he was scheduled to work shifts at the Hospital on September 13, 14, and 15, he did not do so upon instructions from Dr. Klein and Dr. Patras not to return to the Hospital until they had the issue with O'Halla resolved. On September 16, 2002, the plaintiff received a letter signed by Dr. Patras that stated, "This letter is to verify your status with [EME]. As of 9/9/02, we have considered your request and accepted your resignation to provide physician services in the Emergency Department at St. Mary's Streator." The plaintiff testified that he never told Dr. Patras or Dr. Klein that he was resigning from EME. Although the plaintiff attempted to return to work, he never again worked

for EME or at the Hospital after September 9, 2002.

¶ 14        Based on the above facts, the plaintiffs filed a lawsuit against the Hospital, O'Halla, EME, and Dr. Patras (the Hospital lawsuit). The plaintiffs were represented in the Hospital lawsuit by attorney William Kohn. By the time the defendants moved for summary judgment on the plaintiffs' operative fourth amended complaint, five counts remained. Counts I, II, and III were directed against the Hospital and O'Halla. Count I alleged that the Hospital and O'Halla fraudulently induced the plaintiff to agree to the early termination of his existing contract "by falsely promising to allow him to remain an ER physician at the Hospital as long as EME remained the ER physician service provider there." Count II, for tortious interference with contract or at-will relationship, alleged that the plaintiff had an oral agreement with EME's principals "to continue practicing as an ER physician at the Hospital for as long as EME remained the ER physician services provider there," which the Hospital and O'Halla tortiously interfered with by threatening Dr. Patras in September 2002 that if EME did not terminate its affiliation with the plaintiff, the Hospital would terminate EME's contract. Count III alleged a cause of action for tortious interference with prospective advantage, based on the same facts as Count II. Counts IV and V were directed against Dr. Patras for his actions "aiding, abetting and assisting O'Halla/Hospital's tortious interference with [the plaintiff's] affiliation with EME" through their conduct as pled in Counts II and III, respectively.

¶ 15        The defendants filed motions for summary judgment. On Count I for fraudulent inducement, the Hospital and O'Halla argued that the evidence disclosed that the plaintiff had not relied on any statement by O'Halla or another agent of the Hospital in agreeing to terminate his contract early. They argued that, to the extent he believed he was promised that he could work in the Hospital's emergency room for as long as EME held a contract there, the plaintiff could not reasonably rely

upon such a statement. They argued such a statement was merely an expression of goodwill that for various reasons was unenforceable as a contract.

¶ 16     As to Count II for tortious interference with contract or at-will relationship, the Hospital and O'Halla argued that the plaintiff's relationship with EME was that of an independent contractor, and either of them could terminate that relationship at will. They argued that this at-will relationship could not serve as a basis for a cause of action for tortious interference with contract, but only for tortious interference with a prospective economic advantage, as alleged in Count III. However, on Count III, they argued that they had a privilege or justification to interfere with the plaintiff's prospective economic advantage with EME, based on the Hospital's contractual right to direct EME to remove any physician the Hospital deemed unacceptable and to terminate its contract with   EME upon 180 days notice. They argued that the plaintiff's potential opening of a laboratory in Streator that would compete with the laboratory services provided by the Hospital was a sufficient reason for the Hospital to find his continued employment there unacceptable. Finally, on Counts IV and V, Dr. Patras argued that because none of the conduct alleged against the Hospital or O'Halla was tortious, he could not be held liable for aiding or abetting its tortious interference with contract or with a prospective economic advantage. He also argued that his conduct was legally justified to protect EME's financial interest in retaining its sole source of revenue, which was its contract with the Hospital.

¶ 17     Attorney Kohn did not file any written response to the motions for summary judgment on behalf of the plaintiffs. Although he sought to do so on the day of the hearing on the motions, the trial court denied him leave. However, the trial court did allow Kohn to engage in extensive oral argument in opposition to the motions. Kohn's principal arguments were that the plaintiff had an enforceable oral agreement that, if he agreed to the early termination of his contract, he could work

at the Hospital for EME for as long as EME held a contract with the Hospital. Kohn argued that the evidence showed this promise was made by both O'Halla and by EME's principals. He also argued that the term of this oral contract was three years and that it was not terminable at will. Kohn also argued that Dr. Klein had testified in his deposition that, from the beginning of EME's relationship with the Hospital, O'Halla had told Drs. Patras and Klein that he wanted them to phase the plaintiff out of the Hospital and had threatened to end EME's contract if they did not do that. Kohn argued that no privilege or justification existed for the Hospital's interference with the plaintiff's relationship with EME.

¶ 18    At the conclusion of the hearing, the trial court granted the defendants' motions for summary judgment. The transcript reflects that the trial court did not explain its specific reasons for doing so. This granting of summary judgment occurred on March 5, 2013.

¶ 19    Following the granting of summary judgment, Kohn filed a timely notice of appeal on behalf of the plaintiffs. The appeal was docketed with this court. Kohn then procured several extensions of time to file a brief on behalf of the plaintiffs. When no appellate brief had been filed seven months after the expiration of the last extension sought by Kohn, this court dismissed the appeal for want of prosecution. This occurred on December 18, 2014, and the appellate court issued its mandate on February 4, 2015.

¶ 20                                B. The Kohn Lawsuit

¶ 21    On May 1, 2014, the plaintiff discussed with the present defendant, attorney Kevin Conway, the possibility of filing a legal malpractice lawsuit against Kohn, based on Kohn's failure to adequately file a written response to the motions for summary judgment in the Hospital lawsuit. Defendant Conway allegedly told the plaintiff that a lawsuit could not be filed against Kohn until the appeal was resolved but agreed to watch for resolution of the appeal to advise when that could

occur. On December 23, 2015, defendant Conway sent the plaintiff a retainer agreement to represent him in a lawsuit against Kohn. On February 3, 2017, defendant Conway filed a legal malpractice complaint against Kohn on behalf of the plaintiffs (Kohn lawsuit). That complaint alleged that Kohn had committed malpractice by failing to file an adequate response to the motions for summary judgment in the Hospital lawsuit and by failing to file an appellate brief in this court. Kohn then filed a motion to dismiss the plaintiffs' complaint in the Kohn lawsuit, arguing that the applicable statute of limitations had expired prior to February 3, 2017. The trial court granted Kohn's motion and dismissed the complaint with prejudice.

¶ 22                                    C. The Conway Lawsuit

¶ 23        Following dismissal of the Kohn lawsuit, the plaintiffs filed a legal malpractice action against defendant Conway, which is the subject of the present appeal. Their amended verified complaint contains counts alleging breach of contract and negligence, arising out of defendant Conway's alleged failure to file the Kohn lawsuit within the applicable statute of limitation. Conway filed an answer to the amended verified compliant and a motion for summary judgment. In that motion for summary judgment, his argument was that the plaintiffs could never establish the element of proximate cause in their malpractice action against him because, as a matter of law, the trial court had correctly granted summary judgment in the Hospital lawsuit. In other words, even if Kohn had filed a written response to the motion for summary judgment and an appellate brief in the Hospital lawsuit, the plaintiffs would have lost that case; thus, the plaintiffs never would have prevailed in a malpractice lawsuit against Kohn either, so any professional negligence by defendant Conway in failing to timely file a lawsuit against Kohn was not a proximate cause of any damages to the plaintiffs.

¶ 24        In support of his motion for summary judgment, defendant Conway advanced arguments that

were almost identical to those advanced by the defendants in the Hospital lawsuit. Before setting a briefing schedule on the motion, the trial court entered an order setting a deadline for the plaintiffs to file a motion informing the court of any additional discovery they needed to respond to defendant Conway's motion for summary judgment. No such motion for additional discovery was filed, and the plaintiffs responded to the motion for summary judgment.

¶ 25    The trial court granted defendant Conway's motion for summary judgment, finding no genuine issue of material fact existed on the element of proximate causation. The plaintiffs now appeal this granting of summary judgment by the trial court.

¶ 26                                II. ANALYSIS

¶ 27    We review an appeal from a ruling on a motion for summary judgment *de novo*. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. This court may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the trial court relied upon that reasoning. *Id.* If a plaintiff fails to establish an element of the cause of action, summary judgment in favor of the defendant is proper. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007).

¶ 28    The case before us is an action for legal malpractice. The basis of a legal malpractice action involving litigation is that, if the former attorney had not been professionally negligent, the plaintiffs would have been compensated for an injury caused by a third party. *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 12. To prevail on such a claim, the plaintiffs must prove that (1) the defendant attorney owed the plaintiffs a duty of due care arising from an attorney-client

relationship; (2) the defendant attorney breached that duty; and (3) as a direct and proximate result of that breach, the plaintiffs suffered injury. *Id.* (citing *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005)). Proving these elements requires the plaintiffs to establish that, " 'but for' the attorney's negligence, the client would have been successful in the underlying suit." *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 200 (2006). This requires the plaintiffs in a legal malpractice case to prove a "case-within-a-case." *Id.* (citing *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999)).

¶ 29    Generally, the issue of proximate cause in a legal malpractice case is a question of fact to be decided by the trier of fact. *Id.* at 210. However, where proximate cause turns on the question of how a court would have ruled on a particular legal issue in the absence of the alleged malpractice, the issue should be decided by the court. See *id.* at 214 (how appellate court would have ruled in an appellate malpractice case is a question of law to be decided by the court); *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 203 (2007) (whether a trial court would have approved medical malpractice settlement reached on behalf of a minor); *Brummel v. Grossman*, 2018 IL App (1st) 170516, ¶ 57 (whether trial court would have denied opponent's motion for summary judgment motion if defendant attorney had adequately conducted discovery and responded to the motion); 4 R. Mallen, Legal Malpractice § 33:66 (2020 ed.) (whether summary judgment should have been denied or granted raises an issue of law, which court in malpractice action can usually resolve through summary judgment).

¶ 30    In this case, defendant Conway argued, and the trial court found, that as a matter of law the plaintiffs could not establish that his alleged malpractice in failing to file a timely lawsuit against Kohn was a proximate cause of damages resulting from the plaintiffs' loss of the Kohn lawsuit. Conway argued that the plaintiffs never could have won a malpractice case against Kohn, because

regardless of what Kohn had filed in response to the motion for summary judgment in the Hospital lawsuit or on appeal, summary judgment would have been entered against the plaintiffs by the trial court and affirmed by the appellate court. This is the question we must address to resolve this appeal.

¶ 31    As stated above, the motions for summary judgment in the Hospital lawsuit involved five counts of the plaintiffs' operative fourth amended complaint. We thus address whether, absent the alleged malpractice by Kohn, the plaintiffs could have prevailed on any of the causes of action asserted in these five counts.

¶ 32    Count I was a cause of action alleging that the Hospital and O'Halla fraudulently induced the plaintiff to agree to the early termination of his existing contract with the Hospital "by falsely promising to allow [the plaintiff] to remain an ER physician at the Hospital as long as EME remained the ER physician service provider there." Fraudulent inducement is a form of common-law fraud. *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. Establishing this cause of action requires a plaintiff to prove: (1) a false statement of material fact; (2) knowledge or belief by the defendants that the statement was false; (3) an intent to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance. *Id.* (citing *Lagen v. Balcor*, 274 Ill. App. 3d 11, 17 (1995)).

¶ 33    On appeal, the plaintiffs argue that there was evidence in the Hospital lawsuit from which a trier of fact could have concluded that O'Halla made a statement to the plaintiff "that he could stay on at the Hospital as long as EME held the contract there." We agree that the plaintiff's deposition contains this evidence, and Kohn relied upon this testimony at oral argument. However, we find as a matter of law that the plaintiff cannot establish reasonable or justified reliance on this oral

statement given the terms of the written termination agreement that he subsequently signed. A contracting party "is not justified in 'relying on representations outside of or contrary to the contract he or she signs where the signer is aware of the nature of the contract and had a full opportunity to read the contract.' " *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 365 (1995) (quoting *CNC Service Center, Inc. v. CNC Service Center, Inc.*, 731 F. Supp. 293, 301 (N.D. Ill. 1990)). A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud because it followed the contract. *Id.* at 365-66. Although the question of whether reliance is reasonable is usually a question of fact, where it is apparent from the undisputed facts that only one conclusion can be drawn, the question becomes one for the court. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1018 (2007).

¶ 34     Here, after O'Halla made the statement alleged by the plaintiff, he presented the plaintiff with a written termination agreement that did not include any provision that, as consideration for agreeing to the early termination of his existing contract, the plaintiff would always work as an ER physician at the Hospital for as long as EME had a contract there. Rather, it contained a different provision concerning the plaintiff's ongoing ability to work at the Hospital and his affiliation with EME. Instead of providing that he would always work at the Hospital or maintain an affiliation with EME as long as it had a contract with the Hospital, the written agreement provided only that the plaintiff's "Medical Staff privileges will not be terminated *** and shall remain in effect so long as he maintains an affiliation with EMSS." The fact that this written agreement pertained only to the termination of his staff privileges and contemplated that he might not always have an affiliation with EME should have put the plaintiff on notice that there was a reason to doubt the truth of an oral promise that he would always work at the Hospital for as long as EME had a

contract there. The plaintiff cannot sign this written contract and then claim that, despite what it says, the Hospital actually promised something slightly different. "[I]f a contracting party is put on notice by the specific terms of the contract that there is reason to doubt the veracity of an inconsistent oral statement, the party cannot later assert reasonable reliance on that oral statement." *CNC Service Center*, 731 F. Supp. at 302.

¶ 35      Furthermore, we find it unreasonable for the plaintiff to rely on an oral statement by *the Hospital* that EME would not terminate its affiliation with him as independent contractor for as long as it maintained its contract. The plaintiff should have recognized that the keeping of such a promise was not within the Hospital's control, but rather it was dependent on the commitment of EME to continue its independent-contractor relationship with the plaintiff. See *Kusiciel v. LaSalle National Bank*, 106 Ill. App. 3d 333, 338 (1982). Because we hold that the plaintiffs could never establish the element of reasonable reliance necessary to sustain a cause of action for fraudulent inducement, we conclude that summary judgment would have been entered against them on Count I regardless of whether Kohn had filed any written response or appellate brief.

¶ 36      Count II alleged a cause of action against the Hospital and O'Halla titled "tortious interference with contract or at-will relationship." It alleged that the contract they tortiously interfered with was the plaintiff's oral agreement with the principals of EME "to continue practicing as an ER physician at the Hospital for as long as EME remained the ER physician services provider there." It alleged that they tortiously interfered with this contract by threatening Dr. Patras in September 2002 that, if EME did not terminate its affiliation with the plaintiff, the Hospital would terminate EME's contract.

¶ 37      To establish a claim of tortious interference with a contract, the plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendants'

awareness of this contractual relation; (3) the defendants' intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendants' wrongful conduct; and (5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). The contract may be oral, provided it is valid and enforceable. *Lusher v. Becker Bros., Inc.*, 155 Ill. App. 3d 866, 869 (1987). However, where the contract is one that can be terminated at-will by either party, the cause of action is classified as one for tortious interference with a prospective economic advantage, not tortious interference with contract. *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 918 (1999); see also *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 510-11 (1991). Therefore, we begin by addressing whether, assuming a valid and enforceable contract existed between the plaintiff and EME, it was nevertheless one that was terminable at-will.

¶ 38    On appeal, the plaintiffs argue that the evidence showed that the plaintiff and EME's principals had an oral "deal" that if the plaintiff terminated his existing contract and helped EME get the new contract, EME would employ him as an independent-contractor physician for as long as EME held a contract with the Hospital. They contend that this contract was not terminable at-will because it was related to the contract between EME and the Hospital, which provided for a 3-year term.

¶ 39    Perpetual contracts are disfavored. *Jespersen v. Minnesota Mining & Manufacturing Co.*, 183 Ill. 2d 290, 295 (1998). Generally, contracts of indefinite duration are terminable at the will of either party. *Id.* at 293. However, parties may agree that a contract may be terminated only upon the occurrence of a specific event, and such contract will not be considered terminable at-will, but terminable only when that specified event occurs. *Id.* But, to overcome the assumption that a contract for employment is at-will, the terms of an oral contract of employment for a specific

duration must be clear and definite. *Robinson v. BDO Seidman, LLP*, 367 Ill. App. 3d 366, 368-69 (2006) (defendant's alleged oral promises to employ plaintiff "until the new computer fraud and forensic investigation department was successfully established" or "for as long as the plaintiff desired" held not sufficiently clear and definite to overcome presumption that plaintiff's employment was at-will); *cf. Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 864 (1993) (plaintiff sufficiently alleged cause of action for breach of oral contract of employment for specific term where complaint alleged employer agreed in 1988-89 to employ the plaintiff "through 1991").

¶ 40        In this case, we simply find no support in the evidence for the plaintiffs' assertion on appeal that the plaintiff and EME's principals intended their oral "deal" to terminate after three years and to be terminable only upon the expiration of the specific contract that the Hospital and EME executed on July 10, 2001. The plaintiffs' fourth amended complaint alleged that the term of the agreement was for the plaintiff to practice as an ER physician at the Hospital "for as long as EME remained the ER physician service provider there." In his deposition testimony, the plaintiff made multiple statements to the effect that the term of the agreement was "for as long as EME held the contract with the hospital." He described this understanding in the context of his own experience that his contracts with the Hospital had been renewed every two, three, or five years. The mere fact that an independent agreement existed between EME and the Hospital for a 3-year term is not sufficient to conclude that the agreement between the plaintiff and EME was for the same term. The evidence demonstrates that the parties' agreement was not limited to three years or to the specific contract between EME and the Hospital, but it applied also to any extension of that contract. We note that the argument the plaintiffs make on appeal is the same argument that Kohn made at the summary judgment hearing, and the plaintiffs have provided no evidence in this case that Kohn could have submitted to the trial court but did not.

¶ 41     Our conclusion that any purported oral contract between the plaintiff and EME was terminable at will means that, as a matter of law, the plaintiffs would never have been able to establish a cause of action for tortious interference with contract, but rather they would be limited to a claim for tortious interference with prospective economic advantage. *Canel & Hale*, 304 Ill. App. 3d at 918. For this reason, we need not consider the question of whether the alleged oral contract was valid and enforceable under the statute of frauds.[1]

¶ 42     Count III alleged a cause of action against the Hospital and O'Halla for tortious interference with prospective advantage. It alleged that they tortiously interfered with the plaintiff's relationship with EME by threatening Dr. Patras that, if EME did not terminate its affiliation with the plaintiff, the Hospital would terminate EME's contract. It further alleged that neither O'Halla nor the Hospital were privileged to interfere with the plaintiff's affiliation with EME.

¶ 43     To establish a cause of action for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendants' knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages resulting to the plaintiff from such interference. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484 (1998). To prevail, a plaintiff must establish not merely that the defendants succeeded in ending the relationship or interfering with the expectancy, but "purposeful interference" must be shown—*i.e.*, that the defendant has committed

---

[1] The plaintiffs argue on appeal that an affirmative cause of action for promissory estoppel would also have been proper under these facts. However, it appears that Kohn in fact included such a claim as Count XII of the plaintiffs' fourth amended complaint. The record on appeal in this case does not reflect how Count XII was resolved, but it was apparently dismissed prior to the motions for summary judgment that form the basis of the legal malpractice action against Kohn. As the plaintiffs' arguments concerning promissory estoppel are not made in the context of what was pled in Count XII, we decline to consider any argument concerning the viability of a promissory estoppel claim.

some impropriety in doing so. *Id.* at 485.

¶ 44      However, " 'to the extent that a party acts to enhance its own business interests, it has a privilege to act in a way that may harm the business expectancy of others[,] and that privilege is greater where no contract exists between the plaintiff and the entity with which the business relationship is anticipated.' " (Internal punctuation omitted.) *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 219 (2007) (quoting *Curt Bullock Builders, Inc. v. H.S.S. Development, Inc.*, 225 Ill. App. 3d 9, 16 (1992) (citing *Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d 547 (1980), and W. Keeton, Prosser & Keeton on Torts § 130, at 1011 (5th ed. 1984))). Interference with a business expectancy may be privileged where it subserves business competition. *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 468 (2006); *Miller v. Lockport Realty Group, Inc.*, 377 Ill. App. 3d 369, 373 (2007). But the privilege is not limited to instances where the parties are business competitors. *Langer v. Becker*, 176 Ill. App. 3d 745, 754 (1988); see also W. Keeton, Prosser & Keeton on Torts § 129, at 988; § 130, at 1010-11 (5th ed. 1984). Actions are not privileged if they amount to fraud, deceit, intimidation, or deliberate disparagement. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 616 (1995).

¶ 45      In their motion for summary judgment in the Hospital lawsuit, the Hospital and O'Halla argued that, as a matter of law, any interference by them into the plaintiff's independent-contractor relationship with EME was privileged. They cited the fact that the Hospital's contract with EME gave the Hospital the right to direct EME to "remove from service to the Hospital, within thirty (30) days, any physician who the Hospital deems unacceptable." They also cited the Hospital's contractual right to terminate its contract with EME without cause upon notice of 180 days. They argued that, because it was undisputed that the plaintiff was contemplating opening a laboratory

in Streator that would compete with the laboratory services provided by the Hospital, and because the Hospital found it unacceptable to financially support a person seeking to compete with its services and presumably damage the Hospital's financial interests, they had a privilege to direct EME to remove the plaintiff as a contracting ER physician at the Hospital. Defendant Conway reiterated these arguments in his motion for summary judgment in this case, and the trial court largely accepted this reasoning in granting summary judgment. This court agrees also that these facts gave O'Halla and the Hospital a privilege to interfere with the independent-contractor affiliation between the plaintiff and EME, including the Hospital's business interest in not having the owner of a potential competitor for laboratory services working as a physician in the Hospital.

¶ 46    On appeal, the plaintiffs argue that there was no evidence in the record that the lab the plaintiff was thinking about opening would actually compete with the Hospital. This argument, however, is belied by the plaintiffs' own statement in the fourth amended compliant that, "in September 2002, upon learning that [the plaintiff] was contemplating opening a medical laboratory in Streator, Illinois, *which would compete with the laboratory services offered by the Hospital*, O'Halla threatened [the plaintiff] that he would prevent him from working further as an ER physician at the Hospital, if he went through with his plans to open the laboratory." (Emphasis added.) In their motion for summary judgment in the Hospital lawsuit, O'Halla and the Hospital cited this admission as evidence that the lab the plaintiff was contemplating in September 2002 would compete with the laboratory services offered by the Hospital in arguing that their conduct was privileged. Although we recognize the plaintiffs' point that the plaintiff was only "thinking about" opening a lab in September 2002 and thus could have opened one that did not compete with the Hospital's services, we nevertheless find this admission in the plaintiffs' fourth amended complaint stands as evidence that the plaintiff was contemplating opening a medical laboratory in

Streator that would compete with the laboratory services offered by the Hospital. Therefore, we find sufficient evidence in the record that as of September 2002, the plaintiff's position was at least that of a prospective competitor with the Hospital for laboratory services.[2]

¶ 47     We further conclude that the plaintiffs have failed to cite any admissible evidence that could raise an issue of fact about whether the actions by O'Halla or the Hospital was unjustified or malicious, so as to overcome the privilege. *Fellhauer*, 142 Ill. 2d at 512-13. They argue that the plaintiff's potential opening of a competing laboratory was merely pretext to terminate him. They contend that long before the possibility of a competing lab surfaced, O'Halla and the Hospital began a campaign to terminate the plaintiff as soon as EME took over the contract, which creates an issue of fact as to their malicious and unjustified interference with the plaintiff's employment with EME. However, they cite mostly to allegations from the fourth amended complaint in the Hospital lawsuit, which is insufficient to raise an issue of fact where the party moving for summary judgment has supplied evidentiary facts otherwise warranting judgment in its favor as a matter of law. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 470 (2001). They also cite the plaintiff's deposition testimony about his conversations with Dr. Klein and Dr. Patras, in which they allegedly told him that O'Halla wanted him out of the Hospital. However, this is hearsay that would be inadmissible at trial and cannot be considered in a motion for summary judgment summary judgment. *Babich v. River Oaks Toyota*, 377 Ill. App. 3d 425, 429 (2007). They also contend that O'Halla drafted the letter to the plaintiff dated September 16, 2002, but they failed to include any admissible evidence of this in the record on appeal. Thus, we conclude that summary judgment was properly granted as a matter of law on Count III for tortious

---

[2] Although we find that as of September 2002 the plaintiff was at least a prospective competitor of the Hospital, we reject the plaintiffs' argument that the privilege to interfere is inapplicable if the plaintiff and the Hospital were not competitors. *Langer*, 176 Ill. App. 3d at 754 ("The conditional privilege to interfere with a contract is not limited to instances where the parties are competitors.").

interference with prospective advantage.

¶ 48    Counts IV and V of the fourth amended complaint in the Hospital lawsuit were against Dr. Patras. They alleged that Dr. Patras aided and abetted in the tortious interference allegedly committed by the Hospital and O'Halla in Counts II and III, respectively. A claim for aiding and abetting in the commission of a tort requires the plaintiff to prove the following elements: " '(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.' " *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28 (2003) (quoting *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987)).

¶ 49    In the Hospital lawsuit, the plaintiffs would never have been able to prove a claim of aiding and abetting against Dr. Patras, because they never would have been able to establish that the parties whom Dr. Patras aided—*i.e.*, the Hospital and O'Halla—performed a wrongful act that caused the plaintiff an injury. As discussed above, the plaintiffs have failed to show a genuine issue of material fact that the conduct of the Hospital or O'Halla amounted to tortious interference with contract or tortious interference with prospective advantage. Without proof of a tortious act by the Hospital or O'Halla, the plaintiffs would never have been able to establish a cause of action that Dr. Patras aided and abetted them in the commission of a tort.

¶ 50    In conclusion, we find that the trial court in the Hospital lawsuit properly granted summary judgment against the plaintiffs as a matter of law. The plaintiffs in this case have not identified any evidence that Kohn could have relied upon to show a genuine issue of material fact or otherwise defeat summary judgment, if he had filed a written response or an appellate brief. For this reason, the plaintiffs would never have been able to establish in the Kohn lawsuit that, but for

Kohn's alleged professional negligence, they would have been successful in the Hospital lawsuit. And that means they can never prove in this case that, but for defendant Conway's alleged failure to timely file a complaint against Kohn, they would have successfully recovered damages in the Kohn lawsuit. Because the plaintiffs can never make the necessary showing in this case that any alleged professional negligence by defendant Conway was a proximate cause of damages to them, the trial court properly entered summary judgment in favor of defendant Conway.[3]

¶ 51                                III. CONCLUSION

¶ 52        For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of the defendant and against the plaintiffs.

¶ 53        Affirmed.

---

[3] We reject the plaintiffs' argument that summary judgment was improperly granted on the count of their amended verified complaint alleging a cause of action for breach of contract, regardless of whether it was proper on the tort cause of action. A complaint alleging a claim of legal malpractice may be pled under either of these legal theories, and they may be pled in the alternative. *Collins v. Reynard*, 154 Ill. 2d 48, 50 (1992). We have reviewed the two counts, and we discern no substantive difference between them.